631 A.2d 127

**Otto MAJOR et al.**

**v.**

**FIRST VIRGINIA BANK—CENTRAL MARYLAND et al.**

**No. 1940, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Sept. 30, 1993.

522

Stuart L. Alison, Bel Air, for appellants.

D. Christopher Ohly (Bruce L. Mann and Hazel & Thomas, P.C., on the brief), Baltimore, for appellee, First Virginia Bank, et al.

William A. Beale, for appellees, Harco Oldsmobile, Inc. and pro se.

Argued before BISHOP, BLOOM and CATHELL, JJ.

CATHELL, Judge.

This is an appeal from an order of the Circuit Court for Baltimore City granting attorneys' fees under Maryland Rule 1–341. Otto Major and Stuart Alison, appellants, represented the plaintiff in Veta McAnulty v. First Virginia Bank—Central

Maryland. The defendants in that case, First Virginia Bank, Shirley Tittle, Harco Oldsmobile, Inc., and William A. Beale, Esquire, are appellees here.

As we have said, appellants were not parties in the underlying case but were plaintiff's attorneys. They appear here as appellants. In *Legal Aid Bureau, Inc. v. Farmer*, 74 Md.App. 707, 539 A.2d 1173 (1988), Judge Wilner, for this Court, addressed the further appealability of an award for reimbursement of attorney's fees after an appeal to the circuit court from a District Court. He noted that unless the circuit court judgment "pursuant to Md.Rule 1–341 has some special, collateral status, it would not be reviewable by us." *Id.* at 710, 539 A.2d 1173. In his discussion, Judge Wilner clarified that an award of attorney's fees "although ... emanat[ing] from an underlying civil action, ... it is not *necessarily* tied to the merits...." *Id.* at 713, 539 A.2d 1173.

> [A] distinction needs to be drawn between a judgment entered against a *party* to the action and one entered against *counsel*.... We conclude that, for purposes of appellate jurisdiction, a judgment entered by the circuit court against the attorney is sufficiently collateral to the underlying action as to fall within our bailiwick.[1]

*Id.* at 712, 539 A.2d 1173.

The underlying case was first filed in the Circuit Court for Baltimore City in June 1990. Plaintiff alleged that, in repossessing her vehicle, defendants engaged in fraud, conversion, conspiracy, and violated the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* (RICO). The defendants removed the case to Federal District Court where the RICO count was voluntarily dismissed. The federal court remanded the remaining claims back to state court. The entire complaint was dismissed twice in the circuit court, first with leave to amend and then with prejudice. After the second dismissal the defendants filed a motion for attorneys'

---

1. *Farmer* also focused on the appealability of such awards after an appeal to the circuit court from a District Court judgment.

fees under Maryland Rule 1–341. The circuit court granted the motion, awarding total fees of $25,000 to be paid by appellants. This appeal followed.

Appellants present five questions, which we shall address in the following order:

 I. Did the trial court err in finding that appellants lacked substantial justification for and acted in bad faith in prosecuting the RICO and fraud counts?

 II. Did the trial court err in not applying the doctrine of res judicata to the appellants' motion for Rule 1–341 sanctions after the federal court's denial of Rule 11 sanctions for the same costs and attorneys fees?

 III. Did the trial court have jurisdiction to impose Rule 1–341 sanctions for costs and fees charged by appellees while the case was pending in the federal court?

 IV. Did the trial court err in awarding sanctions totalling twenty-five thousand dollars ($25,000.00) under the facts of this case?

 V. Assuming arguendo that an award of sanctions against Otto Major in the amount of $5,000.00 was justified, did the trial court err in imposing four times that amount against Stuart Alison?

We shall affirm.

This case has been reviewed in varying degrees by two state circuit court judges, two Federal District Court judges, and this Court.[2] Many of the facts and issues have been analyzed *ad nauseam.* As this appeal is only from the trial judge's award of attorneys' fees, we will avoid repeating the painstaking analysis engaged in by the other judges and will, when appropriate, defer to their findings by reference to their orders and memoranda included in appellants' record extract.

---

2. This Court issued an unpublished, per curium opinion, *Veta McAnulty v. First Virginia Bank—Central Maryland,* No. 1532, September Term, 1991, filed June 9, 1992. Maryland Rule 8–114 allows this Court to cite unreported opinions for reasons other than precedent, stare decisis, or persuasive authority. The opinion was also included in appellants' record extract.

## THE FACTS

Some background, however, will aid us in reviewing the circuit court's findings that this action was maintained in bad faith and without substantial justification. Veta McAnulty, plaintiff in the underlying case, entered into a marital settlement agreement with her estranged husband. Pursuant to the agreement, he bought her a new car, financing the purchase with an $11,565 loan from Commercial Bank (now First Virginia Bank). The husband executed an installment sales agreement with the bank, while plaintiff executed the sales contract with Harco Oldsmobile, Inc. (Harco). The husband eventually defaulted on the loan. While there was some dispute between the bank and Harco as to whether the security interest in the car was perfected, the bank ultimately assigned the installment sales contract to Harco, who proceeded to repossess and sell the car.

Based on these events, plaintiff, represented by appellants,[3] filed a ten count complaint praying over one million dollars in damages. The complaint alleged violation of federal RICO and state unfair trade practices statutes, conversion, fraud, civil conspiracy, breach of contract, negligence and gross negligence. Appellees removed the case to Federal District Court based on the RICO count and moved to dismiss the entire complaint. Plaintiff was granted a time extension to answer the motion to dismiss. In the order granting that motion Judge Garbis suggested that plaintiff consider voluntarily dismissing the RICO count, and indicated the possibility of sanctions pursuant to Federal Rule of Civil Procedure 11 (Rule 11) if she chose to proceed, as he found the count frivolous. Plaintiff did not answer the motion to dismiss the RICO count.

---

**3.** At the time the complaint was drafted and filed in the circuit court, appellant Stuart Alison was suspended from the practice of law. During his suspension, he was working under the supervision of appellant Otto Major. When Alison's suspension ended, he entered his appearance as co-counsel with Major.

Three weeks later plaintiff voluntarily dismissed the RICO count. Appellees requested that the federal court retain jurisdiction of the state law claims but the court declined, remanding the case to the Circuit Court for Baltimore City. After remand, appellees moved for Rule 11 sanctions against plaintiff and appellants.

In his December 21, 1990, letter Order Judge Garbis found that adequate grounds existed to grant Rule 11 sanctions, but that because the pleading was originally filed in state court and removed to federal court by the defendants (appellees), it should not be held to a Rule 11 standard.[4] Judge Garbis concluded: "Whether the Complaint fails to meet some applicable state court standard is a matter for consideration by the Circuit Court for Baltimore City."

Appellants then filed a motion in federal court for Rule 11 sanctions against appellees, based on the "frivolous" motion for Rule 11 sanctions filed by appellees. Judge Garbis denied the motion, stating that if the Court was "inclined to prolong this totally useless proceeding, it might well, *sua sponte*," impose sanctions on appellants.

After remand, Judge Byrnes in the circuit court held a hearing on appellees' motion to dismiss. Judge Byrnes dismissed the entire complaint with leave to amend on certain conditions. Those conditions included that the amended pleading be factually detailed and explicit, and that the plaintiff verify the entire complaint under oath, subject to the penalties of perjury.

---

**4.** Federal Rule of Civil Procedure 11 states in pertinent part:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after a reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court . . . shall impose . . . an appropriate sanction. . . .

Plaintiff filed an amended complaint,[5] and appellees again moved to dismiss, on the ground, among others, that it did not comply with Judge Byrnes' order. A hearing was held before Judge Noel, in which he dismissed plaintiff's complaint with prejudice. An appeal was noted to this Court upon the complaint's dismissal. During the appeal's pendency, the motion was made for costs and attorneys' fees under Maryland Rule 1–341. Judge Noel held a two-day hearing on the motion and thereafter imposed the sanctions that are the subject of this appeal.

## THE LAW

Maryland Rule 1–341 reads:

In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.

The Court of Appeals has expressly adopted a standard of review for an award of attorney's fees under this rule.

... [B]efore imposing sanctions in the form of costs and/or attorney's fees under Rule 1–341, the judge must make two separate findings that are subject to scrutiny under two related standards of appellate review. First, the judge must find that the proceeding was maintained or defended in bad faith and/or without substantial justification. This finding will be affirmed unless it is clearly erroneous or involves an erroneous application of law. Second, the judge must find that the bad faith and/or lack of substantial justification merits the assessment of costs

---

5. We are unable to determine whether this amended complaint was verified as it was not included in the extract. Verification, or the lack thereof, is not dispositive in any event.

and/or attorney's fees. This finding will be affirmed unless it was an abuse of discretion.

*Inlet Associates v. Harrison Inn Inlet, Inc.,* 324 Md. 254, 267–68, 596 A.2d 1049 (1991). *See also Deleon Enterprises, Inc. v. Zaino,* 92 Md.App. 399, 415, 608 A.2d 828 (1992); *Art Form Interiors, Inc. v. Columbia Homes,* 92 Md.App. 587, 593–94, 609 A.2d 370, *cert. denied,* 328 Md. 567, 616 A.2d 378 (1992).

The trial judge must make explicit findings of fact that a proceeding was maintained or defended in bad faith and/or without substantial justification. *Inlet Associates,* 324 Md. at 269, 596 A.2d 1049 (citing *Zdravkovich v. Bell Atlantic-Tricon Leasing Corp.,* 323 Md. 200, 210, 592 A.2d 498 (1991)). *See also Talley v. Talley,* 317 Md. 428, 436, 564 A.2d 777 (1989); *Beery v. Maryland Medical Laboratory, Inc.,* 89 Md.App. 81, 98, 597 A.2d 516 (1991), *cert. denied,* 325 Md. 329, 600 A.2d 850 (1992); *Legal Aid Bureau, Inc. v. Bishop's Garth,* 75 Md.App. 214, 220, 540 A.2d 1175, *cert. denied,* 313 Md. 611, 547 A.2d 188 (1988); *Century I Condominium Assoc. v. Plaza Condominium Joint Venture,* 64 Md.App. 107, 115, 494 A.2d 713 (1985). Based on those specific findings, the court may order the offending party to reimburse the aggrieved party for attorneys' fees incurred as a result of the opprobrious behavior. This Court has emphasized that Rule 1–341 is not a sanctions rule in the same sense as Rule 11. It does not provide for a monetary award to punish a party that misbehaves. The rule's purpose is to put the wronged party in the same position as if the offending conduct had not occurred.

Furthermore, awarding attorney's fees under this rule is an extraordinary remedy, and it should be used sparingly. *Inlet Associates,* 324 Md. at 277, n. 4, 596 A.2d 1049 (Bell, J. dissenting); *Talley v. Talley,* 317 Md. at 438, 564 A.2d 777 (rule is extraordinary remedy and should reach only intentional misconduct); *Art Form Interiors, Inc. v. Columbia Homes,* 92 Md.App. at 598, 609 A.2d 370 ("sanctions should be reserved 'for the deterrence of unnecessary or abusive litigation.' "); *Black v. Fox Hills N. Community Ass'n,* 90 Md.App.

75, 84, 599 A.2d 1228, *cert. denied,* 326 Md. 177, 604 A.2d 444 (1992) (rule should be invoked only for clear, serious abuses of judicial discretion). *See also Kelley v. Dowell,* 81 Md.App. 338, 567 A.2d 521, *cert. denied,* 319 Md. 303, 572 A.2d 182 (1990). "Rule 1–341 sanctions are judicially guided missiles pointed at those who proceed in the courts without any colorable right to do so." *Bishop's Garth,* 75 Md.App. at 224, 540 A.2d 1175.

## I.

Appellants submit that the trial court erred in finding that the RICO and fraud counts were filed without substantial justification and in bad faith. To show error, they ask us to revisit the statutory definitions and case law interpreting RICO, arguing that their pleadings were a good faith extension of existing case law, and to review both the original and amended complaint as to the fraud allegations. Maryland law, however, mandates that we affirm the trial judge's finding unless clearly erroneous. *Inlet Associates,* 324 Md. at 267–68. "Unless the factual findings of the trial court are clearly erroneous, an appellate court may not arrive at different factual conclusions. If there is any competent material evidence to support the factual findings of the trial court, those findings cannot be held to be clearly erroneous." *Nixon v. State,* 96 Md.App. 485, 491–92, 625 A.2d 404 (1993) (citing *Fantasy Valley Resort, Inc. v. Gaylord Fuel Corp.,* 92 Md. App. 267, 275, 607 A.2d 584 (1992)). We shall not reanalyze the RICO and fraud counts based on the statutes and cases cited. We shall review the trial court's findings of fact and examine the record for evidence supporting the findings.

According to the Court of Appeals, substantial justification is "a reasonable basis for believing that a case will generate a factual issue for the fact-finder at trial[,]" or a position that is " 'fairly debatable' and 'within the realm of legitimate advocacy.' " *Inlet Associates,* 324 Md. at 268, 596 A.2d 1049 (citing *Newman v. Reilly,* 314 Md. 364, 380–81, 550 A.2d 959 (1988), and *Needle v. White, Mindel, Clarke and*

*Hill,* 81 Md.App. 463, 476, 568 A.2d 856, *cert. denied,* 319 Md. 582, 573 A.2d 1338 (1990)). The Court also looked to the comment in the Maryland Lawyers' Rules of Professional Conduct, Rule 3.1, to the effect an action would be without substantial justification if "the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for extension, modification or reversal of existing law." *Id.* at 268, 596 A.2d 1049.

In making a finding specific to the RICO count, the trial court stated:

> Plaintiff's attorneys, in their attempt to satisfy [the RICO pleading] requirement, construe all of the facts relevant to this case so as to fit the defendants' actions neatly into a pattern of racketeering activity. The plaintiff's view of the facts is simply unreasonable. Rather, this court agrees with the defendants who argue that plaintiff's complaint was deficient in alleging a RICO claim based on one "scheme" against one victim. Th[ere] is no evidence or logic supporting the conclusion that the defendants' act constituted a "scheme" that could satisfy the pattern of racketeering activity necessary for a RICO violation. In fact, when the federal court considered plaintiff's arguments in support of her RICO claim, it found that the RICO claim was without merit, stating: "[It] is obvious to the Court, and presumably was obvious to the Plaintiff as well, [that] the RICO claim in Count I was frivolous." Therefore, this court agrees with the defendants that the RICO claim was made solely to take advantage of the treble damages provision of the RICO statute in order to obtain an exorbitant settlement from the defendants, and as such, amounts to a claim brought in bad faith and without substantial legal or factual justification.

Regarding the fraud claim, the trial court stated:

> I believe that too was brought without substantial justification. Not only did the plaintiff's complaint fail to allege the elements of fraud, but a reasonable inquiry into the law on fraud would have revealed that the plaintiff's fraud claim

failed to satisfy the five elements of fraud required under Maryland law.

The trial court further found that both the complaint and amended complaint contained "misstatements of fact which amount to bad faith. . . . Judge Byrnes I think speaks for all those involved in judging this case that the plaintiff's claims are unfounded and made with the sole intention of harassing honest businesspeople in order to line their own pockets." For example, plaintiff alleged in her complaint that certain documents executed by the defendants were forgeries. At the motion's hearing, the trial judge elicited a concession from appellant Alison that he and Major did not know if the allegedly forged documents existed at the time the complaint was filed.

Appellants had been warned both in federal court and in circuit court that their actions might lead to sanctions and an award of attorneys' fees. The trial judge followed through, finding that appellants' actions "merit the assessment of costs and attorney's fees against the plaintiff's attorneys in favor of the defendants' attorneys."

Upon review of the record, and in light of the specific findings of fact made in deciding this motion, we cannot say that the trial judge was clearly erroneous in finding that plaintiff's attorneys filed the complaint in circuit court in bad faith and without substantial justification, nor was the decision to award attorneys' fees from appellants to appellees an abuse of discretion.

## II.

Appellants claim error in the trial court's refusal to rule that the federal court's denial of Rule 11 sanctions against plaintiff was *res judicata* as to appellees' circuit court motion for attorneys' fees under Rule 1–341.

Under Maryland law, the requirements of *res judicata* or claim preclusion are:

> 1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute, 2) that

the claim presented in the current action is identical to the one determined in the prior adjudication, and 3) that there was a valid final judgment on the merits.

*Esslinger v. Baltimore City,* 95 Md.App. 607, 616–17, 622 A.2d 774 (1993) (citing *Cassidy v. Bd. of Educ.,* 316 Md. 50, 57, 557 A.2d 227 (1989)). *See also Jenkins v. Cameron & Hornbostel,* 91 Md.App. 316, 334–35, 604 A.2d 506, *cert. denied,* 327 Md. 218, 608 A.2d 780 (1992); *Lone v. Montgomery County,* 85 Md.App. 477, 490–91, 584 A.2d 142 (1991). All three elements must be present for the final judgment in the first claim to bar the subsequent claim. *Id.*

There is no dispute that the parties to both motions are identical.

Surprisingly, appellants argue in their brief that "there is a substantive difference in [Federal Rule of Civil Procedure] 11 and Maryland Rule 1–341. It is the incurrence of fees and costs which give rise to sanctions under the State Rule. It is the filing of an improper pleading which gives rise to sanctions under the Federal Rule." Not surprisingly, appellees agree, albeit for a slightly different reason. Appellants make no assertion that the claims are identical and we hold that there was no final valid judgment on the merits. We explain.

Appellants argue in their brief that "the ruling on Appellees' Motion for Sanctions was an adjudication on the merits as to sanctions. As such, the adequacy of the pleading and the propriety of sanctions was considered by and decided by the Federal Court." The federal court's order belies this assertion. In denying appellees' motion for Rule 11 sanctions, Judge Garbis states:

The Court has received the Defendants' Motion for Sanctions and . . . has considered it. In general, there would be a good reason presented for granting Rule 11 sanctions in a case in which a frivolous RICO claim . . . was brought. However, in the case, it is the Defendants and not the Plaintiff who filed the Complaint in the United States District Court by virtue of their removal based upon the subject RICO claim. . . .

. . . .

In this case, it is the Circuit Court for Baltimore City in which the Plaintiff filed her Complaint. *The Plaintiff did not file the Complaint in federal court and should not, therefore, be held to a Rule 11 standard as to the pleading.* Whether the Complaint fails to meet some applicable state court standard is a matter for consideration by the Circuit Court for Baltimore City. [Emphasis added.]

Appellants construe the language that "Plaintiff . . . should not . . . be held to a Rule 11 standard as to the pleading" as an adjudication on the merits of the sanctions motion. This reading of the judge's order is disingenuous at best. In their opposition to appellees' motion for Rule 11 sanctions, appellants conceded that the motion asked for sanctions based solely on the *filing* of the RICO count. The RICO count was filed in state court, not federal court. Appellants argued in federal court that, under *Kirby v. Allegheny Beverage Corp.,* 811 F.2d 253, 257 (4th Cir.1987), and *Dahnke v. Teamsters Local 695,* 906 F.2d 1192 (7th Cir.1990), "Rule 11 is applicable only to Pleadings or other papers filed subsequent to or contemporaneous with the removal [to federal court] and any infirmity in the sufficiency of the [pleading] filed in the Circuit Court for Baltimore City is beyond the jurisdiction of this Court." Judge Garbis agreed and denied the motion based on lack of jurisdiction, not on the merits. "A judgment on the merits has been defined traditionally as one which rules on 'the real or substantial grounds of action or defense as distinguished from matters of practice, procedure, *jurisdiction* or form.'" *Annapolis Urban Renewal Auth. v. Interlink, Inc.,* 43 Md.App. 286, 292, 405 A.2d 313 (1979) (citing *Clegg v. United States,* 112 F.2d 886, 887 (10th Cir.1940)) (emphasis added).

Our reading of Judge Garbis's clear and articulate order is that he is not applying Rule 11 to the pleadings in question; he is remanding the matter to the Circuit Court where the proper state law should be applied. We note at least four separate instances in the record where the federal

court describes the plaintiff's RICO claim as frivolous. Had Judge Garbis held the plaintiff's complaint to a Rule 11 standard, he would have been required to impose sanctions against plaintiff. Application of Rule 11 is mandatory; if a violation is found, sanctions must be imposed. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

The record in this case does not support the allegation that the Rule 11 motion in Federal District Court was adjudicated on the merits for the purposes of *res judicata*. We hold that appellants have not established the three required elements that would allow the Federal District Court's ruling on appellees' motion for Rule 11 sanctions to bar their motion for Maryland Rule 1–341 sanctions under the doctrine of *res judicata*. Therefore, the trial court's order was not barred under the *res judicata* doctrine.

### III.

Next, appellants claim that the trial court cannot award attorneys' fees for work relating to any claims addressed by the federal court. It is axiomatic that the Rules should be interpreted by their plain meaning, and this issue relates directly to the scope of Rule 1–341. Rule 1–341 applies to "any civil action." Maryland Rule 1–202 defines "action" as any steps taken to enforce rights in a "court." "Court," for the purposes of Title I of the Rules, is a "court of this state." We agree with appellants that the scope of Rule 1–341 does not encompass proceedings in federal court.

Appellants' argument that the language in Rule 1–341 makes it applicable only to state courts was addressed by the Court of Appeals in *Newman v. Reilly*, 314 Md. 364, 376–77, 550 A.2d 959 (1988). In *Newman*, the Court considered whether Rule 1–341 permitted an award of attorneys' fees arising out of Health Claims Arbitration Office [HCAO] proceedings. Dr. Newman argued that the HCAO was an "action" as defined by the Rule. The Court, adopting our holding from *Reilly v. Newman*, 74 Md.App. 281, 536 A.2d 1230,

*modified,* 314 Md. 364, 550 A.2d 959 (1988), held that Rule 1–341 did not empower the circuit court to sanction conduct in HCAO proceedings, stating:

> The short answer . . . is that Rule 1–341 was adopted by this Court in the exercise of its rulemaking power under Maryland Constitution art. IV, § 18(a) which concerns "the practice and procedure in and the administration of the appellate courts and in the other courts of the State[.]" . . . [T]he HCAO "is created as a unit in the Executive Department. It is headed by a Director appointed by the Governor with the advice and consent of the Senate." The interpretation urged by Dr. Newman raises substantial questions concerning the constitutional power of this Court to regulate conduct before an executive agency.

*Newman v. Reilly,* 314 Md. at 377, 550 A.2d 959 (citation omitted).

In *Marquardt v. Papenfuse,* 92 Md.App. 683, 610 A.2d 325, *cert. denied,* 328 Md. 93, 612 A.2d 1316 (1992), we followed the same analysis. There, attorneys' fees of over $80,000 were well documented and considered reasonable. The issue was whether fees should be awarded based on work done by the attorneys in respect to proceedings before the Commissioner of Land Patents. *Id.* at 713–14, 610 A.2d 325. After citing the analysis stated above we held "that the circuit court in this case did not have the power under Maryland Rule 1–341 to include within *its* sanction order sanctions for conduct that occurred prior to . . . the date the appellants' order of appeal [from the Commissioner's decision] was filed in the circuit court." *Id.* at 715, 610 A.2d 325 (footnote omitted).

 These holdings also raise substantial questions concerning this Court's power to regulate conduct before federal courts. Appellees state in their brief, and we agree, that the procedural opportunity to bring a motion under Rule 1–341 is not available in federal court, as the federal court has no authority to regulate conduct before it based on Maryland rules. The Court of Appeals is authorized under the Maryland Constitution to regulate the courts of this State. No

argument was advanced, and we know of no authority that allows the Court of Appeals to regulate conduct before the federal courts.

Appellees set forth an interesting argument based on judicial estoppel: "Having contended in federal court that the Circuit Court, not the federal court, had jurisdiction over the Defendants' motions for sanctions concerning the RICO claim, the Appellants are judicially estopped, from claiming that the Circuit Court was without jurisdiction to determine the motions for sanctions." Appellees, however, miss a subtle distinction in appellants' argument.

Appellees moved for Rule 11 sanctions based *solely* on the filing of a frivolous RICO claim by appellants. Appellants answered, correctly, that under *Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253, the federal court had no jurisdiction to impose sanctions based on the original complaint because it was filed in state court. Had appellees alleged a violation of Rule 11 based on some other paper filed by appellants in federal court, that court may have found jurisdiction. Judge Garbis alluded to this possibility in his Memorandum/Order ruling on appellants' Motion to Reconsider and for Rule 11 sanctions (filed *after* appellees' motion for sanctions). He noted that appellant "did file in this Court several documents in support of the RICO claim. Hence, he is not quite in a *Kirby* situation."

Judge Garbis did not, however, go on to revise the basis of his previous order—that his court had no jurisdiction to impose sanctions. It follows that, had their motion encompassed more than the original complaint, appellees could have recovered sanctions in federal court. Based on the Rule 11 motion submitted by appellees, Judge Garbis had no option but to apply *Kirby* and dismiss for lack of jurisdiction.

Appellants argue here (putting aside the *res judicata* claim) not that the circuit court cannot require reimbursement of attorneys' fees, but that it cannot require reimbursement of fees incurred in federal court. Each court has jurisdiction over these proceedings based on the scope of their sanctions

or reimbursement rule. The scope of Rule 11 and Rule 1–341 is different. In the case at bar, the two courts do have distinct areas of authority which do not completely overlap. Appellants address a technical distinction, but they are not playing so "fast and loose" as to require the application of judicial estoppel.

We agree with Judge Noel that, as clearly enunciated in *Kelley v. Dowell,* 81 Md.App. 338, 342, 567 A.2d 521, *cert. denied,* 319 Md. 303, 572 A.2d 182 (1990), "[w]here the filing of a pleading or motion is at issue, the appropriate point of inquiry for the evidentiary finding is whether the party *initiated* the action in bad faith or without substantial justification." *See also Bishop's Garth,* 75 Md.App. at 222, 540 A.2d 1175; *Century I Condominium Assoc.,* 64 Md.App. at 118, 494 A.2d 713. It follows that any attorneys' fees incurred in circuit court resulting from filing the unjustified claim would properly be reimbursed under Rule 1–341.

In the hearing on the Rule 1–341 motion and in his written opinion, Judge Noel was careful to elicit and document the facts known to appellants when the initial pleading was filed in Circuit Court. He found no evidence, facts, or logic on which appellants could have based the RICO count. He explicitly found that the fraud count was *brought* without substantial justification in that it did not allege the elements of fraud or facts sufficient to satisfy the elements. Appellant Alison testified that he made no independent investigation before drafting the complaint; he relied entirely on Major's knowledge of the case. Mr. Major had one five-minute meeting with a bank representative. Neither appellant spoke with the defendants, other than that one meeting. It is not clear whether the appellants saw the car's original title before filing the suit. In short, the judge based his decision on the facts showing that the complaint was filed in bad faith and without substantial justification.

We therefore hold that attorneys' fees, to the extent that they were incurred solely in federal court, cannot be reimbursed under Maryland Rule 1–341. To the extent

that attorneys' fees were incurred in the circuit court, they are reimbursable under Rule 1–341, even in respect to the RICO count. We add, however, that while we agree with appellants that Rule 1–341 does not reach fees incurred solely in federal court, we believe that appellees are entitled to fees for work product presented in circuit court even if that same work product was presented in federal court.

## IV.

In awarding fees, the court may exercise its discretion in the light of certain factors, including: evidence submitted by counsel showing time spent defending an unjustified or bad faith claim or defense, the judge's knowledge of the case and the legal expertise required, the attorney's experience and reputation, customary fees, and affidavits submitted by counsel. *Deleon,* 92 Md.App. at 419–20, 608 A.2d 828. *See also Cameron & Hornbostel,* 91 Md.App. at 337, 604 A.2d 506; *Johnson v. Baker,* 84 Md.App. 521, 543, 581 A.2d 48 (1990), *cert. denied,* 322 Md. 131, 586 A.2d 13 (1991); *Century I Condominium Assoc., Inc.,* 64 Md.App. at 121, 494 A.2d 713. There may, however, be an additional burden in cases where fees are sought for only a portion of the proceedings.

In *Beery,* 89 Md.App. at 102, 597 A.2d 516, this Court held:

From a practical standpoint, the major item of expense incurred in opposing an unjustified claim or defense will almost always be the attorney's fee, and in most cases these days that fee will be based upon "billable hours" expenses by the attorney. An attorney who intends to claim compensation under Rule 1–341 for [bringing or] defending a multiple-count claim in which at least one count has colorable merit may have to keep records that accurately reflect what time is expended on specific aspects of the case, in order to meet the burden of proof on that issue. A *post facto* arbitrary apportionment of generalized time records will not suffice.

The instant case presents us with a situation in which the *Beery* language applies. Therefore, Judge Noel had to take

into account the extent to which the evidence regarding billable hours would result in an "arbitrary apportionment of generalized time records." *Id.* The facts surrounding the fee determination in *Beery* are illuminating in helping us define that phrase. There, counsel submitted only a generalized statement claiming legal fees in excess of $36,000 along with the Rule 1–341 motion. Counsel apportioned one-fourth of the fees to a count which the court considered justified and not in bad faith, and one-fourth each to three claims filed in bad faith and without substantial justification. *Beery,* 89 Md.App. at 99, 597 A.2d 516. The record indicated that the three unjustified issues were not equal with respect to the time necessary to demonstrate a lack of justification. The Court stated that "[w]hat appellee's counsel did to apportion the total bill for legal fees, arbitrarily assigning about one-fourth to each count, simply will not suffice." *Id.* at 101, 597 A.2d 516.

■ Conversely, in the case at bar, appellants presented voluminous, usually specifically itemized, exhibits showing billable hours at the sanctions hearing. They also offered the testimony of an expert witness who had reviewed the time records, analyzed the reasonableness of the time spent on the different issues, redacted time spent on issues which were not found to have been filed in bad faith or without substantial justification, and gave an opinion as to the reasonableness of the hourly rates charged. Appellees were given the opportunity for, and conducted, extensive cross-examination.

The process used to determine the fees here should not be considered an "arbitrary apportionment," when applying the *Beery* holding and taking into account the factual situation in *Beery.* The Court awarded a total of $25,000 in fees out of a total of $60,652.85 requested by Mr. Beale, on behalf of Harco and himself, and by Hazel & Thomas, on behalf of First Virginia Bank. Here, unlike *Beery,* there was evidence of billings from which the expert and the trial court could determine an apportionment of fees. It is evident from the amount awarded that the Court considered the facts and law and exercised proper discretion in reaching a decision.

Both *Newman,* 314 Md. 364, 550 A.2d 959, and *Marquardt,* 92 Md.App. 683, 610 A.2d 325, which hold that Rule 1–341 is inapplicable to proceedings outside of Maryland courts, were the law at the time of Judge Noel's ruling. "Judges are presumed to know the law. Absent an indication to the contrary, we must assume that judges apply the law correctly to the case before them." *Hebb v. State,* 31 Md.App. 493, 499, 356 A.2d 583 (1976). *See also Bangs v. Bangs,* 59 Md.App. 350, 370, 475 A.2d 1214 (1984); *Samson v. State,* 27 Md.App. 326, 334, 341 A.2d 817 (1975). Judge Noel's well-reasoned opinion gives us no indication to the contrary.

We hold that an award of attorneys' fees in the amount of $25,000 was not an abuse of discretion under the facts of this case.

## V.

Allocating the amounts due between the offending attorneys is part and parcel of the determination regarding the award amount, which rests within the sound discretion of the trial judge. The same law applies.

Our careful review of this record does not allow us to second guess the trial court's determination that Mr. Alison "led the charge" in this case. Zealous advocacy of a client's position is usually to be commended. Also commendable is knowing when to redirect and modify an argument to protect a client's best interest. When three courts and at least as many judges have determined that a claim is meritless, it may be time to modify the arguments on the merits of that claim. Mr. Alison continued to make the same arguments on the merits of the claim up to and at the hearing on the amount of attorney's fees. These same arguments had previously been rejected, and the claims found to be frivolous.

Mr. Alison was suspended from the practice of law at the time the case was filed below. The reasons for Mr. Alison's suspension are found at *Attorney Grievance Commission v. Alison,* 317 Md. 523, 565 A.2d 660 (1989). At 319 Md. 708, 575 A.2d 334, the Court of Appeals upheld Judge Hinkel's findings

that in one prior incident Alison practiced law while suspended.

At oral argument, Alison admitted that he had prepared the initial pleadings while he was still suspended. He implied, when arguing that his sanction was disproportionately large, that, while he prepared the pleadings, they were filed by Mr. Major because he, Alison, was suspended. He further claimed that, even though he acknowledged being the initiating person, his sanction should have been smaller because Mr. Major—not he, Alison, had officially been in the case from the beginning. In essence, in stating these grounds, he was asserting that an attorney who is in a frivolous case a shorter period should be less sanctioned than an attorney who is in the case for a longer period. In making that argument, a similar allegation is also made, *i.e.*, that the attorney in the case the longer period should be subject to the greater sanction.

We note that Alison appeared in this case not only in his own behalf, but also as counsel for Mr. Major. We question his ability to avoid a conflict of interest when he argues that his sanction should be less because he is less culpable than his client.

We need not determine, however, whether Mr. Alison is four times more culpable than Mr. Major for the conduct that led to the award of attorneys' fees under Rule 1–341. The sanction awarded against Mr. Alison is supported by the evidence. Whether Mr. Major should have been sanctioned more heavily, as Mr. Alison seemed to suggest at oral argument, is not before us; appellees have made no such assertion. We hold that the trial judge did not abuse his discretion in determining that Mr. Major is liable for $5,000, and that Mr. Alison is liable for $20,000, of the $25,000 in attorneys' fees awarded.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANTS.