CEDARS CORPORATION, APPELLEE AND CROSS-APPELLANT, V.
SUN VALLEY DEVELOPMENT CO. AND U.S. INVESTMENT
CORPORATION, APPELLANTS AND CROSS-APPELLEES,
AND CONCORD CORPORATION ET AL., APPELLEES.

573 N.W.2d 467

Filed February 13, 1998.   No. S-96-490.

Steven J. Riekes, P.C., of Marks Clare & Richards, for appellants.

Joseph F. Gross, Jr., of Timmermier, Gross & Burns, for appellee Cedars Corp.

Maurice R. Johnson, of Peebles & Evans, P.C., for John M. Peebles.

Denise E. Frost for Domina & Copple, P.C.,

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, STEPHAN, and McCORMACK, JJ.

CONNOLLY, J.

The Nebraska Court of Appeals determined that appellee Cedars Corporation had filed a frivolous cause of action against appellants, Sun Valley Development Co. and U.S. Investment Corporation. *Cedars Corp. v. Sun Valley Dev. Co.*, 94 NCA No. 26, case No. A-92-1044 (not designated for permanent publication) (*Cedars VII*). On remand, the district court for Douglas County awarded fees and costs against Cedars and its attorneys in accordance with Neb. Rev. Stat. § 25-824 (Reissue 1995). The district court allocated responsibility for payment of the fee award among Cedars and its attorneys, with Cedars bearing primary responsibility for payment of the award. Sun Valley and U.S. Investment appeal, contending that the allocation was an abuse of discretion. Cedars cross-appeals, contending that the district court abused its discretion in determining the overall amount of the award. We conclude that the district court did not abuse its discretion in determining the overall amount of the award, but did abuse its discretion in its allocation of that award. Accordingly, the award is modified, and the sanction of $26,595.85 and costs is allocated evenly, one-third to Cedars, one-third to attorney John M. Peebles, and one-third to Domina & Copple, P.C.

## BACKGROUND

The seeds of this appeal were planted in a series of seven lawsuits filed by Cedars. Edward E. Milder, a resident of California, is the president, sole officer, and sole stockholder of Cedars. In 1959, Cedars became part of a joint venture involving Sun Valley, U.S. Investment, and three other joint venturers. Since the late 1960's, Milder has repeatedly and unsuccessfully brought suit against the joint venturers, seeking an audit of the transactions that occurred as part of the joint venture. A common thread in all these cases was the issue of the audit. A more detailed factual background of the first such lawsuit can be found in *Cedars Corp. v. H. Krasne & Son, Inc.*, 189 Neb. 220, 202 N.W.2d 205 (1972) (*Cedars I*).

Following *Cedars I*, two suits were filed in the district court for Douglas County. The record does not specifically state the outcome of these first two cases. Next, in *Cedars Corp. v. Sun Valley Development Co.*, 213 Neb. 622, 330 N.W.2d 900 (1983)

(*Cedars IV*), this court affirmed an order of the district court dismissing a fourth suit filed by Cedars and determined that the action was barred by either res judicata or collateral estoppel. This court further stated that Cedars could not continue to maintain frivolous and vexatious suits by merely rearranging the parties or changing their names. Also during 1983, in *Cedars Corp. v. Valley Ho Corp.*, 214 Neb. 48, 332 N.W.2d 52 (1983) (*Cedars V*), another appeal regarding the joint venture was found to be without merit.

Cedars next filed a federal Racketeer Influenced and Corrupt Organizations Act (RICO) suit. The federal district court granted a motion for sanctions, finding that while the complaints were framed in various ways, Cedars was "simply attacking the same basic point again and again," and that the complaints constituted harassment under Fed. R. Civ. P. 11.

In 1994, the Nebraska Court of Appeals held in an unpublished decision that Cedars had filed a frivolous cause of action. The Court of Appeals remanded with directions to award appellants, Sun Valley and U.S. Investment, reasonable attorney fees and court costs for proceedings in the trial court pursuant to § 25-824, the statutory section authorizing an award of reasonable attorney fees against any party or attorney who has brought or defended a frivolous action. *Cedars VII*. During the time the instant case was pending, Peebles represented Cedars and was employed by the law firm of Domina & Copple.

### INVOLVEMENT OF ATTORNEY PEEBLES AND DOMINA & COPPLE LAW FIRM

The record of the hearing on remand shows that Peebles first represented Milder and Cedars in 1987 while Peebles was an employee at the law firm of Steier & Kreikemeier, P.C. At that time, Peebles entered an appearance on behalf of Cedars in the RICO action. At the time of his appearance in the federal case, or shortly thereafter, Peebles knew there was a motion pending to dismiss the case and a motion for sanctions. Peebles also knew the motion for sanctions stated that the lawsuit was the sixth such action filed by Cedars against Sun Valley. After entering his appearance, Peebles filed an amended complaint. Subsequently, the federal court issued an order granting a motion for sanctions against Cedars in the amount of $1,268.

The order stated that the lawsuit was the sixth action instituted by Cedars against Sun Valley, that all of Cedars' claims arising out of the joint venture had been fully litigated, and that the court found the complaint to be frivolous and filed for an improper purpose. Peebles testified that the cost of the sanctions was passed on to Milder or his corporation and that he told Milder of the order. Peebles also testified he made efforts to review the validity of the Cedars RICO action by reviewing documents that had been filed and reviewing the proceedings. Peebles also discussed issues with accountants and relied on the expertise of other attorneys regarding some issues.

After the federal RICO action, in 1989, Milder again hired Peebles to represent him in the instant case. Peebles was hired after the lawsuit had been filed. At that time, Peebles had left his employment with Steier & Kreikemeier and was employed as an associate at the law firm of Domina & Copple. The answer filed by Sun Valley alleged the affirmative defense of res judicata, listed the prior cases, and requested sanctions for the institution of a frivolous action. U.S. Investment filed notice that it would move for sanctions at the time of trial on the basis that the proceedings were frivolous. Later, in 1990, Peebles received a letter from an attorney for one of the appellants informing him that he concluded there was no merit to the action, that it was frivolous, and that it was filed for the purpose of harassing his client. In 1991, Peebles received a letter from the same attorney stating that 2 years had passed since the lawsuit was filed, that Peebles had failed to appear at a hearing, and that since Peebles had presented no experts to support his position, the attorney hoped the suit would be dismissed. Peebles testified that he knew he was dealing with a client who was filing vexatious lawsuits and that some of Milder's demands of him did not make sense. Peebles further testified Domina & Copple also knew it was dealing with a client who was filing vexatious lawsuits.

Milder terminated services with Peebles and Domina & Copple after judgment had been entered against him and a motion for a new trial was denied. Thus, in the instant case, Milder was represented by Peebles in his capacity as an employee of the Domina & Copple firm from the time Peebles entered his appearance in the action until Milder terminated the services of Peebles and Domina & Copple following trial.

While Peebles was employed at Domina & Copple, he was supervised by a partner and the firm's shareholders, who were aware of the case. Peebles testified that any pleadings he signed were on behalf of the firm and that billings were made by the firm. At one point in the litigation, in response to demands by Milder for extensive discovery that Peebles conceded did not make sense, a partner at the firm wrote to Milder requesting that a sum of $150,000 be paid in advance if Milder wished the firm to continue the case for him. The letter also stated the firm would have to withdraw as counsel unless the fee requirement was met if the firm was to pursue the discovery regime outlined by Milder. Peebles further testified he discussed the Cedars case with the partners of Domina & Copple. The record indicates Peebles discussed with some of the partners the history of prior litigation. Peebles left Domina & Copple in 1993.

Milder testified the current assets of his corporation totaled approximately $1,200 and its investment in the joint venture was the only assets it ever had. Milder testified he personally borrowed money in order to finance the litigation. Milder stated Peebles never advised him that the U.S. District Court found the federal RICO litigation to be frivolous or that sanctions had been awarded. Milder also testified Peebles was the only attorney he dealt with at Domina & Copple. However, Peebles testified that someone from Steier & Kreikemeier discussed the sanction issue with Milder and that a copy of the order awarding sanctions in the federal RICO case had been sent to Milder and discussed with him.

Frederick S. Cassman, the attorney who represented Sun Valley at trial, submitted an affidavit indicating his charge for services at the rate of $150 per hour was $5,980.50 and there was $65.35 in costs and expenses. An attorney called as an expert witness testified this sum was reasonable. The witness further testified $17,500 was a reasonable charge for the services of the attorney for U.S. Investment in the case.

The district court awarded sanctions in the sum of $26,595.85 and allocated responsibility for the sum by assessing $250 to the law firm of Domina & Copple, $1,000 to Peebles, and $25,345.85 to Cedars.

## ASSIGNMENTS OF ERROR

The appellants assign as error abuse of discretion by the trial court by allocating primary responsibility for the payment of attorney fees to Cedars rather than allocating the major responsibility for the fees to Peebles and Domina & Copple.

On cross-appeal, Cedars assigns as error abuse of discretion by the district court by erroneously assessing the evidence to include an inflated estimate of attorney fees and by disregarding the circumstances surrounding the litigation at the trial level.

## STANDARD OF REVIEW

The standard of review on a trial court's determination of a request for sanctions is whether the trial court abused its discretion. *Malicky v. Heyen,* 251 Neb. 891, 560 N.W.2d 773 (1997).

A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Greenwalt v. Wal-Mart Stores,* 253 Neb. 32, 567 N.W.2d 560 (1997); *Pope v. Pope,* 251 Neb. 773, 559 N.W.2d 192 (1997).

## ANALYSIS

The appellants contend the district court abused its discretion when it allocated the primary responsibility for the payment of attorney fees to Cedars rather than to Peebles and the Domina & Copple law firm. The appellants argue that the allocation made by the district court does not serve the purposes of an award of attorney fees under § 25-824 because the allocation is not sufficient to deter the attorneys involved from representing clients in future frivolous actions, and because Cedars has limited assets, the allocation will not provide compensation to Sun Valley.

Section 25-824 states:

(2) . . . [I]n any civil action commenced or appealed in any court of record in this state, the court shall award as part of its judgment and in addition to any other costs otherwise assessed reasonable attorney's fees and court costs against any attorney or party who has brought or defended a civil action that alleges a claim or defense which a court determines is frivolous or made in bad faith.

(3) When a court determines reasonable attorney's fees or costs should be assessed, it shall allocate the payment of such fees or costs among the offending attorneys and parties as it determines most just and may charge such amount or portion thereof to any offending attorney or party.

Neb. Rev. Stat § 25-824.01 (Reissue 1995) lists factors that a court shall consider when granting an award of attorney fees pursuant to § 25-824(2) and in determining the amount to be assessed against offending attorneys and parties. The factors include, but are not limited to, the following:

(1) The extent to which any effort was made to determine the validity of any action or claim before the action was asserted; (2) the extent of any effort made after the commencement of an action to reduce the number of claims or defenses being asserted or to dismiss claims or defenses that have been found not to be valid; (3) the availability of facts to assist the party to determine the validity of a claim or defense; (4) the relative financial position of the parties involved; (5) whether or not the action was prosecuted or defended in whole or in part in bad faith . . . . [The statute lists five more factors that are less applicable to the instant case.]

Section 25-824.01 specifically addresses the determination of the amount of an award under § 25-824. However, reason dictates that the allocation of amounts due between offending parties and attorneys is "part and parcel" of the determination of the amount of the award. *Major v. First Virginia Bank*, 97 Md. App. 520, 631 A.2d 127 (1993).

In 1983, § 25-824 was amended to allow courts to award attorney fees against an offending attorney. In *Graham v. Waggener*, 219 Neb. 907, 911, 367 N.W.2d 707, 710 (1985), we determined that an action was res judicata and that the attorneys involved "simply chose to ignore a fully binding adverse final judgment." We further stated that "a proliferation of actions in which the same issues are raised is not proper and will not be tolerated. . . . Such a tactic engenders disrespect for law and justice and unnecessarily adds to the caseload of an already overburdened judicial system." *Id.* (citing *Stones v. Plattsmouth*

*Airport Authority*, 193 Neb. 552, 228 N.W.2d 129 (1975), and *Cedars IV*). Accordingly, we made an award of attorney fees and taxed responsibility for those fees to the offending party. However, we also stated that but for the fact that the ability of the court to tax fees against offending attorneys was new, a portion of the award in *Graham* would have been taxed to Graham's attorneys, and made clear that "[t]his provides due warning for the future." 219 Neb. at 911, 367 N.W.2d at 710.

An action is frivolous or in bad faith if a party attempts to relitigate the same issue previously resolved in an action involving the same party. *Lincoln Lumber Co. v. Fowler*, 248 Neb. 221, 533 N.W.2d 898 (1995); *Sports Courts of Omaha v. Meginnis*, 242 Neb. 768, 497 N.W.2d 38 (1993). It is clear that the attorneys involved in the instant action did not just fail to discover that Cedars' claim was without merit. Rather, they chose to ignore a series of rulings stating the issues involved were res judicata. The record is clear Peebles knew of the amount and nature of the previous Cedars litigation. The fact Cedars was engaged in a series of frivolous actions was readily apparent simply by reading the cases. In 1983, we stated in *Cedars IV*, "Cedars has had its day in court and cannot continue to maintain frivolous and vexatious suits by merely rearranging the parties or changing their names." 213 Neb. at 627, 330 N.W.2d at 904. Furthermore, when Peebles began representing Cedars in the instant action, he knew sanctions had been imposed in the previous RICO litigation and knew of the court's determination that Cedars was "attacking the same basic point again and again" in a manner that constituted harassment under Fed. R. Civ. P. 11.

Concerning Domina & Copple's involvement, the record shows that as an associate of the firm, Peebles signed documents on behalf of the firm and that billing of clients was conducted by the firm. The record further shows that Domina & Copple exercised some degree of oversight regarding the cases handled by attorneys in its office. Of particular importance is the fact at one point a partner of the Domina & Copple firm wrote a letter to Milder informing him that the firm might withdraw as counsel and requesting the sum of $150,000 if the firm was to carry out discovery as requested by Milder. Peebles tes-

tified this was in response to discovery demands by Milder that did not make any sense.

In the instant case, both Peebles and the law firm of Domina & Copple had clear notice of the frivolous nature of the Cedars lawsuit. While zealous advocacy is usually to be commended, it is also necessary for an attorney to know when to redirect an argument to protect his client's best interests or in some instances, to just say "no more." See *Major v. First Virginia Bank*, 97 Md. App. 520, 542, 631 A.2d 127, 138 (1993) (affirming a fee award taxed to attorneys after "three courts and at least as many judges" found the claim involved to be without merit). Thus, where the underlying facts are largely undisputed, "counsel is primarily responsible for ascertaining whether claims are supported by existing law or a nonfrivolous argument for the extension thereof." *Levine v. County of Westchester*, 164 F.R.D. 372, 376 (S.D.N.Y. 1996) (taxing fees to attorney, rather than client, following maintenance of frivolous action).

The often-cited purpose of sanctions is deterrence. See *Temple v. WISAP USA in Texas*, 152 F.R.D. 591 (D. Neb. 1993), and *Levine v. County of Westchester, supra* (both applying Fed. R. Civ. P. 11). Thus, if through a fee award, little responsibility is allocated to attorneys for their actions, there will be little deterrent effect on the behavior of the attorneys involved or on other members of the profession. The district court's lopsided allocation placed little or no responsibility upon the attorneys. The trial court's allocation was untenable. Accordingly, the district court abused its discretion in its allocation of the fees involved, and the award must be modified.

Having determined that the district court abused its discretion, we next conclude that we should reallocate the award, rather than remand for a reallocation. Ordinarily, an improper calculation of attorney fees would require a remand in order to reconfigure the award. See, *In re Thirteen Appeals Arising Out of San Juan*, 56 F.3d 295 (1st Cir. 1995); *Lipsett v. Blanco*, 975 F.2d 934 (1st Cir. 1992) (discussing reallocation of attorney fees under abuse of discretion standard in civil rights cases). However, when the record is sufficiently developed that the reviewing court can apply the law to the facts and calculate a fair and reasonable fee without resorting to remand, that route is

available to the appellate court. *In re Thirteen Appeals Arising Out of San Juan, supra*; *Lipsett v. Blanco, supra*. In the instant case, the litigation is over, with only the issue of fees remaining. This series of litigation has gone on now for over 25 years; a remand would only serve to waste additional resources and further prolong the mischief. The record is sufficiently developed for this court to make a determination of a just allocation.

Peebles cannot disclaim responsibility for his actions on the grounds he was acting under the direction of individuals in the firm. The record indicates that Milder sought out Peebles because Peebles had previously represented him. The record further shows Peebles had sufficient discretion and control over the case, and he must also be responsible for his individual conduct. See *Brubakken v. Morrison*, 240 Ill. App. 3d 680, 608 N.E.2d 471 (1992).

The record also shows Cedars, Peebles, and the Domina & Copple firm had the opportunity to apply the brakes on this litigation and they failed to do so. Accordingly, they will share equally in the sanctions. We conclude that the attorney fees and costs are to be shared equally: one-third Cedars, one-third Peebles, and one-third Domina & Copple.

## CROSS-APPEAL

On cross-appeal, Cedars contends that the district court abused its discretion in determining the reasonableness of the fee award and that the award should have been made for only time spent at trial. The Court of Appeals directed that an award of reasonable fees be made for proceedings in the trial court. Such a statement did not act to limit the fee award only to time spent at trial. Rather, the use of the term "trial court" can be read synonymously with the term "district court." Thus, Cedars' argument that the award was only to be for time spent at trial is without merit. In addition, the record contains sufficient evidence regarding the reasonableness of the total amount reached by the district court. As a result, we cannot say that the district court abused its discretion in determining the overall amount of the fee award.

AFFIRMED AS MODIFIED.

GERRARD, J., not participating.