TAYLOR OIL COMPANY, INC., APPELLANT, V. EDITH A. RETIKIS AND FICKE & FICKE, THE AUCTIONEERS, APPELLEES.

575 N.W. 2d 870

Filed March 27, 1998.    No. S-96-686.

Edmond E. Talbot III, O'Hanlon Law Offices, for appellant.

Steven E. Achelpohl for appellee Retikis.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

WRIGHT, J.

## NATURE OF CASE

Taylor Oil Company, Inc. (Taylor Oil), brought this declaratory judgment action against Edith A. Retikis and Ficke & Ficke, The Auctioneers, to determine rights to the proceeds received from an auction sale. Taylor Oil appeals from an order of the district court finding that the proceeds were not subject to Taylor Oil's security agreement.

## SCOPE OF REVIEW

On appeal from a declaratory judgment, an appellate court, regarding a question of law, has an obligation to reach a conclusion independent of the trial court's conclusions. *SID No. 2 v. County of Stanton*, 252 Neb. 731, 567 N.W.2d 115 (1997).

## FACTS

Retikis and Peter Adams operated an establishment known as Aunt Kate's Restaurant pursuant to a lease agreement with Taylor Oil executed on June 16, 1992. In the fall of 1992, Adams, Retikis, and Brad Taylor, a part owner and vice president of Taylor Oil, met to discuss a change in the lease agreement. At this meeting, Adams informed Brad Taylor that he was disaffiliating himself from the restaurant and that he wanted to be removed from the lease agreement. Brad Taylor and Retikis

consented to this change, marked through Adams' name on the lease agreement, and initialed the change.

In February 1993, Retikis leased another restaurant, located in Arlington, Nebraska, from James Taylor, president of Taylor Oil. Soon afterward, Retikis informed James Taylor that the restaurants were not doing well. At a meeting, James Taylor informed Retikis that he would help her in any way he could.

On April 23, 1993, Retikis sent Adams to retrieve a $5,000 loan from Taylor Oil. When Adams arrived, he was given a check and asked to sign a "receipt." The receipt, which was written out longhand and signed by Adams on April 23, 1993, reads as follows: "I Do Hereby Promise To Pay Taylor Oil Co., Inc[.] 5000.00 (Five Thousand) Payable on Demand."

Retikis apparently cashed the check, and she indicated at trial that initially she was not asked to sign a promissory note for the $5,000 loan. Retikis stated that she had wanted to repay the loan, but that each time she mentioned the subject to Brad Taylor, he would tell her "not to worry about it."

On December 2, 1993, Retikis was asked by Brad Taylor to go to his office and sign a backdated promissory note for $5,000 regarding the loan by Taylor Oil. At this meeting, Retikis signed a promissory note, a security agreement, and a financing statement. The promissory note, dated April 23, 1993, stated that Retikis promised to pay Taylor Oil $5,000 with an interest rate of 9½ percent per year until the debt was paid in full. Retikis testified that the date on the note did not reflect the date the note was signed, but indicated the date on which Taylor Oil advanced the $5,000 to Retikis.

The security agreement Retikis signed provided that it was granted to secure payment of a promissory note for $5,000 with an interest rate of 9½ percent per year from "date until due." As collateral for the debt, Retikis provided "[a]ll inventory, fixtures and equipment contained in 'Aunt Kate's' restaurant, more particularly described in Exhibit 'A' . . . ." Exhibit A is a metes and bounds description of property located in Harrison County, Iowa. There is no description of any collateral contained in exhibit A.

Retikis was not given a copy of the security agreement, and she testified that she did not understand what the document was

until trial. She claimed that when she was asked to sign the security agreement, she asked Brad Taylor what the document was, and she was told that she was signing a promissory note and a repayment schedule. She also testified that Taylor Oil never informed her that it wanted a security agreement prior to the December 1993 meeting with Brad Taylor.

Adams testified that he was the owner of the restaurant equipment located at Aunt Kate's Restaurant and that he never agreed that this equipment could be used as collateral for a loan involving Taylor Oil. He also testified that he did not know that Retikis had signed a security agreement encumbering the restaurant equipment owned by him.

In April 1994, Adams met with an auctioneer, Don Ficke, of Ficke & Ficke, The Auctioneers, to discuss an auction sale of restaurant equipment which Adams owned. Prior to the meeting, Adams had moved the property to Aunt Kate's Restaurant for the purpose of selling it at auction. Some of the equipment, such as booths, was used in the operation of the restaurant, but the majority was simply stored on the premises. Adams testified that with the exception of a few items, he was the sole owner of all the items sold at the auction.

Prior to the auction, Adams informed Brad Taylor that Adams owned the equipment located at Aunt Kate's Restaurant and that he intended to sell it. Adams claimed that he offered to sell the equipment to Brad Taylor prior to the auction, but this offer was refused. Ficke testified that he dealt exclusively with Adams in connection with the auction and that he believed Adams was the owner of the equipment which was sold, with the exception of some china worth approximately $10.

In February 1994, Taylor Oil demanded that Retikis vacate Aunt Kate's Restaurant, and it was closed on May 31. On June 28, an auction took place at Aunt Kate's Restaurant, resulting in net sale proceeds of $5,624.07. Ficke testified that Brad Taylor contacted Ficke the day of the auction, gave him a business card, and asked him for a copy of the closing statement. However, Ficke did not recall Brad Taylor's disclosing that Taylor Oil claimed a security interest in the proceeds of the auction.

On April 3, 1995, Taylor Oil filed a petition for declaratory judgment in the district court for Lancaster County, seeking a

judgment declaring that Taylor Oil was entitled to the net sale proceeds under the terms of the security agreement. Retikis answered, denying that the property was subject to a security agreement and alleging that the property was not owned by her and that the security agreement was not supported by consideration because it was not executed in connection with the promissory note.

The district court found that the auction proceeds were not subject to the security agreement and financing statement, and dismissed the petition. Taylor Oil appeals.

## ASSIGNMENT OF ERROR

Taylor Oil asserts that the district court erred when it found that the property sold at auction was not subject to Taylor Oil's financing statement and security agreement.

## ANALYSIS

This is a declaratory judgment action, and Neb. Rev. Stat. § 25-21,159 (Reissue 1995) provides in part that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." In her answer to Taylor Oil's claim that it was entitled to the proceeds of the auction, Retikis alleged that she was not the owner of the property sold. The evidence also suggests that Taylor Oil had access to information which would have indicated that Adams was the partial or total owner of some of the equipment stored at Aunt Kate's Restaurant. Still, Taylor Oil did not join Adams as a party to the action. Therefore, we must first consider whether Adams is a necessary party to Taylor Oil's petition for declaratory relief and, accordingly, whether the district court had jurisdiction to hear this action.

In *Krohn v. Gardner*, 238 Neb. 460, 471 N.W.2d 391 (1991), we stated that our case law makes it clear that the statute authorizing a declaratory judgment is applicable only where all interested or necessary persons are made parties to the proceedings. (Citing *Shepoka v. Knopik*, 197 Neb. 651, 250 N.W.2d 619 (1977).) Accord *Omaha Pub. Power Dist. v. Nuclear Elec. Ins. Ltd.*, 229 Neb. 740, 428 N.W.2d 895 (1988). A necessary or

indispensable party to a suit is one who has an interest in the controversy to an extent that such party's absence from the proceedings prevents the court from making a final determination concerning the controversy without affecting such party's interest. *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994); *Concerned Citizens v. Department of Environ. Contr.*, 244 Neb. 152, 505 N.W.2d 654 (1993); *Shepoka v. Knopik, supra.*

In *SID No. 57 v. City of Elkhorn*, 248 Neb. 486, 497, 536 N.W.2d 56, 65 (1995), we stated: "[T]he presence of necessary parties is jurisdictional and cannot be waived, and if such persons are not made parties then the district court has no jurisdiction to determine the controversy." See, also, *Redick v. Peony Park*, 151 Neb. 442, 37 N.W.2d 801 (1949) (finding that presence of necessary parties is jurisdictional and cannot be waived).

Adams had a stake in the controversy such that a final decree could not be entered in this case without affecting his interest. Thus, Adams is a necessary or indispensable party. Since the statute authorizing a declaratory judgment, § 25-21,159, is applicable only where all necessary and indispensable persons are made parties to the proceeding, see, *Hoiengs v. County of Adams, supra*; *Concerned Citizens v. Department of Environ. Contr., supra*; *Krohn v. Gardner, supra*; *Koenig v. Southeast Community College*, 231 Neb. 923, 438 N.W.2d 791 (1989); *Omaha Pub. Power Dist. v. Nuclear Elec. Ins. Ltd., supra*; *Redick v. Peony Park, supra*, the district court had no jurisdiction to enter a judgment without first making Adams a party to the lawsuit.

Despite the omission of Adams, the district court did make a final determination. At first impression, one might infer that Adams was not an indispensable party, because the district court determined that Taylor Oil did not have an interest in the collateral, and that, therefore, Adams' ownership rights in the collateral were not affected by the district court's ruling. However, such an inference would result in a misapplication of the intent and purpose of the law. The parties are not permitted to first obtain a judgment and then apply the requirements of § 25-21,159 to determine who is a necessary party to an action.

In *Updike Investment Co. v. Employers Liability Assurance Corporation*, 128 Neb. 295, 258 N.W. 470 (1935), this court stated that an action to secure a declaration of rights is designed to terminate a controversy so far as it relates to the parties and facts giving rise thereto and that courts should, under most circumstances, dismiss such an action without prejudice whenever all parties whose claims gave rise to the controversy and whose rights upon such claims would be adjudicated by the declaration sought, had they been a party to the action, have not been impleaded.

The absence of necessary parties prevents a court from finally deciding a controversy. Without Adams being made a party, the question of whether the proceeds of the auction were subject to a security interest could not be fully and completely adjudicated. Therefore, we conclude that Adams' presence in the action is a jurisdictional requirement and that the failure to join Adams as a necessary party requires a reversal of the district court's judgment and dismissal of the action without prejudice.

## CONCLUSION

The judgment of the district court is reversed, and the cause is remanded with directions to dismiss without prejudice.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

WHITE, C.J., dissenting in part.

The majority erroneously allows the losing party to relitigate its rights. While I may agree that as to the nonparty Adams, Taylor Oil may relitigate, I do not agree that Taylor Oil should have the opportunity to relitigate against Retikis. Taylor Oil had its day in court against Retikis and lost.

The doctrine of res judicata should operate to protect one who fully and fairly litigated an issue. The majority has snatched defeat from the jaws of victory. I dissent in part.