LEA M. HOLSTE, PERSONAL REPRESENTATIVE OF THE ESTATE OF
TIMOTHY V. ANDERSON, DECEASED, APPELLEE, V.
BURLINGTON NORTHERN RAILROAD COMPANY, A DELAWARE
CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLEE,
CINDA MARIE BRANON, PERSONAL REPRESENTATIVE OF THE
ESTATE OF DONALD LEE BRANON, DECEASED, PLAINTIFF AND
THIRD-PARTY DEFENDANT, APPELLEE, AND
THOMAS PETERSON-MORE, INTERESTED PARTY, APPELLANT.
IN RE ESTATE OF DONALD L. BRANON, DECEASED.
KAPLAN LAW CORPORATION, A CALIFORNIA PROFESSIONAL
CORPORATION, APPELLANT, V. BURLINGTON NORTHERN RAILROAD
COMPANY ET AL., APPELLEES.
592 N.W. 2d 894

Filed April 16, 1999.   Nos. S-97-412, S-97-509, S-97-533.

W. Patrick Betterman and Mary Lou Perry, of Betterman & Perry, for appellant Peterson-More.

Laurice M. Margheim for appellee Branon.

Jeanelle R. Robson and Robert A. Cannon, of Knudsen, Berkheimer, Richardson, Endacott & Routh, for appellee Burlington Northern.

Wright, Connolly, Gerrard, and McCormack, JJ., and Hannon, Judge.

Gerrard, J.

## I. NATURE OF CASE

The estate of Donald Lee Branon was opened in the county court for Morrill County. Donald Branon's widow, Cinda Marie Branon (Branon), the personal representative of that estate and an appellee herein, filed a wrongful death action which was eventually brought in the district court for Box Butte County. After the case was settled, several of Branon's former attorneys sought payment from the proceeds, and by the terms of the settlement, a cash sum was paid in to the county court pending resolution of the claims by the district court. Kaplan Law Corporation (Kaplan), a California law firm and one of the appellants, filed an attorney's lien in the county court before the county court paid out the funds. Before final disposition of all the funds by the district court, Thomas Peterson-More, an attorney associated with Kaplan, tried to voluntarily dismiss his then-pending quantum meruit claim. After appearing in court on that claim and participating in adducing evidence, Peterson-More claimed that the court lacked personal jurisdiction over him.

This appeal presents several questions: Could the district court properly retain jurisdiction over the actions for fees and then issue orders to the county court regarding disposition of the funds? If the county court paid out funds without itself notifying Kaplan, were Kaplan's due process rights violated, even though Kaplan had notice of the district court hearing at which the dispute over fees was actually to be litigated? Could the district court properly exert personal jurisdiction and disallow Peterson-More's voluntary dismissal, in order to expediently resolve the competing claims? If so, was this an appealable order, such that the filing of notice of appeal terminated the jurisdiction of the trial court to decide the issues?

## II. FACTUAL BACKGROUND

Appellee Branon is the personal representative of the estate of her deceased husband, Donald Branon. She was the plaintiff

in an action in the district court against Burlington Northern Railroad for the wrongful death of Donald Branon. Donald Branon's estate was probated, however, in the county court.

Branon was initially represented in a lawsuit in the U.S. District Court for the District of Nebraska by Charles Collins, an attorney from Minnesota. Collins associated with Michael Javoronok, a Nebraska attorney, as local counsel. The case was certified from the U.S. District Court to the district court for Box Butte County, where it was consolidated with a wrongful death action brought by the personal representative of the estate of Timothy V. Anderson, who had been killed in the same train collision that was the subject of the Branon lawsuit. Paul Snyder, of Scottsbluff, Nebraska, represented the Anderson estate.

Branon later fired Collins and retained Kaplan to represent her. Peterson-More, of counsel with Kaplan, assumed the specific responsibility for her representation. He also associated with Javoronok as local counsel and was admitted to practice pro hac vice in Nebraska on April 22, 1996.

Peterson-More, Javoronok, and Snyder jointly worked to develop the common elements of their cases. Javoronok later became dissatisfied with the amount and quality of the work that Peterson-More was performing on the case. Javoronok asked Branon to make him lead counsel instead of Peterson-More and told her that if she was unwilling to make him lead counsel, then he wanted to be discharged as counsel. Branon discharged Javoronok per his request.

Snyder then negotiated a settlement on behalf of the Anderson estate in that case. He refused, for much the same reason as Javoronok, to associate with Peterson-More as local counsel in the Branon lawsuit.

Subsequent events are the subject of some dispute. Peterson-More asserted that he had negotiated a settlement for his client in October 1996. In December, Peterson-More introduced Branon to Susan Haines, a Colorado attorney specializing in structured settlements. Haines was retained to represent Branon and prepared settlement documents on Branon's behalf, although there was some question as to whether Haines had been hired by Branon or by Kaplan as outside counsel. Haines

associated with Jerald Ostdiek as local counsel, but Ostdiek refused to file the settlement documents that Haines had prepared.

Branon later became dissatisfied with the lack of progress in her case. In January 1997, she fired Kaplan, and in February, she fired Haines. Branon then retained Laurice Margheim, of Alliance, Nebraska, as her sole counsel.

Branon, through counsel, then completed settlement negotiations and submitted the settlement for approval by both the district court and the county court. It was approved by both courts on March 5, 1997. The district court approved the settlement, but retained jurisdiction over a dispute regarding the attorney fees to be paid from the proceeds of the settlement. The settlement agreement provided that a cash sum was to be paid to the clerk of the county court, pending resolution of the dispute.

The present controversy arises from the competing claims for attorney fees arising from the settlement. Snyder filed attorney's liens in both the county court and the district court, seeking reimbursement for some of the common expenses incurred while jointly preparing the consolidated Anderson and Branon cases. Snyder's claim was settled when Kaplan agreed to compensate him for those expenses. Javoronok also filed for fees and expenses. Ingebritson & Associates filed a claim for the work performed by Collins, but this claim was settled on March 27, 1997. Haines filed for fees, claiming that her work formed the basis of Margheim's work. Finally, Kaplan filed an attorney's lien on March 5 and an amended attorney's lien on March 24. Both of these documents were signed by Peterson-More; neither was signed by a Nebraska attorney.

Initially, a sum of $515,333 was paid in to the county court to guarantee the lien claims. On March 26, 1997, the court released $78,000 to Branon and, upon Branon's stipulation, also released $75,820.41 to Ingebritson & Associates in satisfaction of their claim. Remaining were Javoronok's claim for $69,282.03, Haines' claim for $14,369.16, and Kaplan's claim for $274,000, the latter being based on Kaplan's assertion that it was entitled to the contingency fee for the total amount of the eventual settlement.

On April 2, 1997, a scheduled hearing was held regarding the dispute among Branon and her former attorneys. Present were Javoronok, Haines, Branon, and Peterson-More as counsel for Kaplan. The district court struck Kaplan's amended attorney's lien, finding that it had not been presented by a Nebraska attorney as required by Neb. Rev. Stat. § 7-103 (Reissue 1997). The district court then stated that "in regard to the attorneys of quantum meruit, Mr. Peterson-More is allowed to proceed pro se in this court in regard to his services that he rendered." The hearing proceeded with the examination of Javoronok as a witness, including a lengthy cross-examination of Javoronok by Peterson-More, until the hearing was adjourned because Peterson-More was unprepared to continue with the presentation of evidence. Peterson-More was scheduled to present evidence at a hearing on April 18. On April 9, the district court, upon Branon's motion, authorized the release of another $100,000 to Branon, leaving $261,512.59 in the county court.

On April 11, 1997, Kaplan and Peterson-More each filed an "Entry of Appearance and Notice of Dismissal." In these filings, the Omaha firm of Betterman & Perry entered appearances as counsel for both Peterson-More and Kaplan. The filings purported to withdraw and dismiss without prejudice any claims advanced by Peterson-More and Kaplan in the Branon case, pursuant to Neb. Rev. Stat. § 25-602 (Reissue 1995). Branon filed a response on April 15, objecting to the purported dismissals. Argument on the issue was scheduled for April 18.

On April 15, 1997, Kaplan requested a stay in the county court. The reason for the request was that Kaplan had, on the same day, filed a complaint in the U.S. District Court for the District of Nebraska, seeking a judgment on its claim for fees from Branon both personally and as personal representative of the estate. The hearing on the stay application was to be held on May 28. On April 17, Kaplan filed a second amended attorney's lien, this time filed by its Nebraska counsel.

On April 17, 1997, Kaplan and Peterson-More each also filed a "Special Appearance," objecting on several grounds to the hearing regarding the voluntary dismissals of Peterson-More and Kaplan. The bases for the objections were, inter alia, that the district court was divested of jurisdiction by the prior vol-

untary dismissals and that the district court lacked personal jurisdiction over Peterson-More and Kaplan.

A telephonic hearing was held on April 18, 1997, with Javoronok, counsel for Branon, and counsel for Haines present personally, and counsel for Kaplan and Peterson-More appearing telephonically. The special appearance of Kaplan was determined to be moot, as Kaplan had no valid attorney's lien. The special appearance of Peterson-More was overruled. The district court then stated, while counsel for Peterson-More and Kaplan was still connected, "I'm telling you I'm going ahead today to decide what, if any, fees should be allowed to Thomas Peterson-More as he was working with the Kaplan Law Firm or whatever and so I am going ahead in that regard, do you understand?" In response to this direct question, counsel for Peterson-More and Kaplan replied, "Yes, Your Honor."

At 9:59 a.m. on April 18, 1997, Peterson-More filed a notice of appeal from the district court's vacation of his voluntary dismissal and the overruling of his special appearance. This is on appeal here as case No. S-97-412. Counsel for Kaplan and Peterson-More did not participate in the presentation of evidence that was conducted during the remainder of the April 18 hearing, following the overruling of their special appearances.

That afternoon, the district court found that Peterson-More was not entitled to a contingency fee. Peterson-More was allowed attorney fees in the amount of $26,000, from which was deducted $12,000 in fees awarded to Haines. This figure was further reduced by $14,000, to be paid to Branon, which the district court determined to be the "value of the loss of use" of the settlement proceeds due to Peterson-More's lack of diligence in reducing the settlement to writing. Peterson-More was also awarded fees and costs in the amount of $31,152.56; from this, the district court subtracted $833 and $237.20, awarded respectively to Snyder and another attorney witness, Paul Hofmeister, for "witness fees and expenses of waiting to testify and having to return another day due to a continuance requested by Thomas Peterson-More." Javoronok was awarded $69,272.

On April 21, 1997, the findings of the district court were filed in the county court, and the county court entered an order

releasing the funds as specified by the district court; the remaining funds were released to Branon.

On May 9, 1997, Peterson-More filed another notice of appeal in the district court, appealing from the final judgment entered by the district court on April 18. This became case No. S-97-509. On May 19, Kaplan filed a notice of appeal in the county court, appealing from the April 21 distribution of funds. This is case No. S-97-533. Cases Nos. S-97-412, S-97-509, and S-97-533 have been consolidated on appeal, and all three cases were removed to this court when we granted Branon's motion to bypass the Nebraska Court of Appeals.

## III. ASSIGNMENTS OF ERROR

Peterson-More assigns that the Box Butte County District Court erred in (1) overruling his special appearance, (2) setting aside his voluntary dismissal made under Neb. Rev. Stat. § 25-601 (Reissue 1995), (3) setting aside his voluntary dismissal under § 25-602, (4) finding that it had subject matter jurisdiction, (5) finding that it had personal jurisdiction over Peterson-More, (6) proceeding to determine the alleged claims of Peterson-More after his voluntary dismissal, (7) awarding witness fees in excess of the statutory amount, (8) issuing orders to the Morrill County Court, and (9) proceeding to determine attorney fees after the perfection of an appeal.

Kaplan assigns that the Morrill County Court erred in (1) distributing estate funds without notice to interested parties and an opportunity for them to be heard and (2) distributing estate funds without first determining the amount and extent of Kaplan's attorney's lien.

## IV. SCOPE OF REVIEW

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Divis v. Clarklift of Nebraska, ante* p. 384, 590 N.W.2d 696 (1999).

When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court's; however, when a determination rests on factual findings, a trial court's decision on the issue will

be upheld unless the factual findings concerning jurisdiction are clearly incorrect. *In re Interest of Kelley D. & Heather D., ante* p. 465, 590 N.W.2d 392 (1999); *Crete Carrier Corp. v. Red Food Stores*, 254 Neb. 323, 576 N.W.2d 760 (1998).

The standard of review of a trial court's determination of a request for sanctions is whether the trial court abused its discretion. *Cedars Corp. v. Sun Valley Dev. Co.*, 253 Neb. 999, 573 N.W.2d 467 (1998). A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## V. ANALYSIS

We must first consider the character of the action underlying these appeals and the nature of the issues presented. The present appeals concern claims made by various attorneys pursuant to Neb. Rev. Stat. § 7-108 (Reissue 1997), which provides:

> An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession in the course of his professional employment; and upon money in his hands belonging to his client, and in the hands of the adverse party in an action or proceeding in which the attorney was employed from the time of giving notice of the lien to that party.

In the present case, the lien claimants sought disbursement of funds that were not in their own possession, but in the possession of the county court. It would appear that the parties were attempting to create and enforce charging liens under the last clause of this statute, providing that right when funds are in the hands of an "adverse party."

The rule is well established, however, that under § 7-108, money in the hands of a court-appointed receiver is not in the hands of an adverse party. *Lewis v. Gallemore*, 175 Neb. 279, 121 N.W.2d 388 (1963). See, also, *U.S. v. Olson*, 4 F.3d 562 (8th Cir. 1993), *cert. denied, Needler v. Olson* 510 U.S. 1024, 114 S. Ct. 636, 126 L. Ed. 2d 594; *Culhane v. Anderson*, 17 F.2d 559 (8th Cir. 1927); *Anderson v. Farmers Co-op Elevator Ass'n, Inc.*, 874 F. Supp. 989 (D. Neb. 1995). See, also, generally, 7 Am. Jur. 2d *Attorneys at Law* § 361 (1997). This rule applies

with equal if not greater force where the receiver is the court itself.

Consequently, none of the parties on appeal can claim to have had valid attorney's liens under § 7-108, because the funds they sought were not in the hands of an "adverse party" within the meaning of that statute. We have held, however, that "[w]hile a court under certain circumstances may allow attorney's fees from funds in the hands of a receiver, it is done under the equitable powers of the court and not by virtue of an attorney's lien." *Lewis v. Gallemore*, 175 Neb. at 283, 121 N.W.2d at 391-92.

Therefore, the district court did not err in allowing attorney fees from the received funds despite the lack of valid attorney liens. The district court did not act pursuant to statute, but instead exercised its inherent equitable powers.

### 1. Determining Fees After Notice of Appeal

Peterson-More contends that it was improper for the trial court to evaluate the merits of the competing claims after Peterson-More filed his first notice of appeal in case No. S-97-412. Branon responds that the denial of Peterson-More's special appearance was not a final, appealable order, so the district court retained jurisdiction. We must first decide if the denial of the special appearance was appealable. This presents a jurisdictional question of law, regarding which we make our own determination independent of the trial court's judgment. See, *In re Interest of Kelley D. & Heather D.*, ante p. 465, 590 N.W.2d 392 (1999); *Crete Carrier Corp. v. Red Food Stores*, 254 Neb. 323, 576 N.W.2d 760 (1998).

The three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right in an action and which in effect determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered. *O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998).

It is clear that the order in this case denying Peterson-More's special appearance did not prevent a judgment, nor was it made

by summary application after the judgment was rendered. The question, then, is whether the denial of the special appearance affected a substantial right in a special proceeding.

A substantial right is an essential legal right, not a mere technical right. *SID No. 1 v. Nebraska Pub. Power Dist.*, 253 Neb. 917, 573 N.W.2d 460 (1998). A substantial right is affected if the order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which the appeal is taken. *Id.*

Peterson-More argues that "[t]here can be no question that both the right to due process and the right of [sic] to dismiss his claims were substantial rights possessed by Thomas Peterson-More." Brief for appellant in cases Nos. S-97-412 and S-97-509 at 26. Peterson-More offers little in the way of authority to support this claim. We will nonetheless consider each of Peterson-More's claimed "substantial rights."

### (a) Personal Jurisdiction

Peterson-More argued at the hearing on his special appearance that the district court lacked personal jurisdiction over him consistent with the Due Process Clause of the 14th Amendment to the U.S. Constitution, and he appealed from the overruling of this special appearance. This court has held, however, that an order overruling a special appearance is not a final order from which an appeal can be taken. *State v. Jones*, 209 Neb. 296, 307 N.W.2d 126 (1981) (dealing with subject matter jurisdiction); *In re Estate of Greenamyre*, 133 Neb. 693, 276 N.W. 686 (1937) (dealing with personal jurisdiction). See, also, *Ranch & Farm Lines, Inc. v. Dressman*, 185 Neb. 328, 175 N.W.2d 299 (1970); *Busboom v. Gregory*, 179 Neb. 254, 137 N.W.2d 825 (1965); *Ruse v. Navajo Freight Lines, Inc.*, 178 Neb. 670, 134 N.W.2d 807 (1965); *Erdman v. National Indemnity Co.*, 178 Neb. 312, 133 N.W.2d 472 (1965) (cases holding that order sustaining special appearance based on personal jurisdiction is not final, appealable order, unless it results in dismissal of action).

We have not, however, directly confronted the interlocutory appeal of an order overruling a special appearance contesting personal jurisdiction under the Due Process Clause. There are Nebraska cases in which appeals have been taken from the over-

ruling of such special appearances, but those appeals were taken after the entry of a judgment on the merits. See, e.g., *Grand Island Hotel Corp. v. Second Island Development Co.*, 191 Neb. 98, 214 N.W.2d 253 (1974); *Stucky v. Stucky*, 186 Neb. 636, 185 N.W.2d 656 (1971).

The initial issue confronting this court, then, is whether the overruling of a special appearance contesting personal jurisdiction on due process grounds affects a substantial right. We conclude that it does not.

The U.S. Supreme Court addressed a similar issue in *Van Cauwenberghe v. Biard*, 486 U.S. 517, 108 S. Ct. 1945, 100 L. Ed. 2d 517 (1988). In that case, the Court addressed the propriety of an interlocutory appeal from the denial of a motion to dismiss on the grounds of the principle of specialty and forum non conveniens. *Id.* The Court noted:

> In the context of due process restrictions on the exercise of personal jurisdiction, this Court has recognized that the individual interest protected is in "not being subject to the binding judgments of a forum with which [the defendant] has established no meaningful 'contacts, ties, or relations.'" [Citation omitted.] Similarly, we believe petitioner's challenge to the District Court's exercise of personal jurisdiction because he is immune from civil process should be characterized as the right not to be subject to a binding judgment of the court. Because the right not to be subject to a binding judgment may be effectively vindicated following final judgment, we have held that the denial of a claim of lack of jurisdiction is not an immediately appealable collateral order.

486 U.S. at 526-27, quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985), and citing *Catlin v. United States*, 324 U.S. 229, 65 S. Ct. 631, 89 L. Ed. 911 (1945). Compare *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 109 S. Ct. 1976, 104 L. Ed. 2d 548 (1989).

The right asserted by Peterson-More is a right guaranteed by the U.S. Constitution, and in that context, the U.S. Supreme Court has drawn a clear distinction between the right to be free from litigation in a particular forum and the right not to be subject to a binding judgment from such a forum. *Id.* The Court has

also indicated clearly that the right protected by the Due Process Clause is the right not to be subject to a binding judgment. *Id.* Accord *Crete Carrier Corp. v. Red Food Stores*, 254 Neb. 323, 576 N.W.2d 760 (1998). Thus, we conclude that the right not to be bound by a judgment can be vindicated in an appeal from the final judgment and is not a substantial right for the purpose of determining the appealability of an order; it does not affect the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which the appeal is taken. See *SID No. 1 v. Nebraska Pub. Power Dist.*, 253 Neb. 917, 573 N.W.2d 460 (1998). Having made this determination, we need not address whether a special appearance is a "special proceeding." We also need not address whether the overruling of a special appearance raising a due process challenge to personal jurisdiction would support the issuance of a writ of mandamus, as that issue is not before us.

### (b) Voluntary Dismissal

Peterson-More also appealed from the district court's vacation of the voluntary dismissal of his claim, and he argues that this appeal also divested the district court of jurisdiction to proceed. Peterson-More directs us to no authority supporting the proposition that the vacation of his voluntary dismissal is an appealable order. Here, as above, the trial court's order did not prevent a judgment, nor was it made by summary application subsequent to the judgment. Therefore, the question again is whether the vacation of Peterson-More's voluntary dismissal affected a substantial right in a special proceeding.

For reasons that will be analyzed more completely *infra*, we determine that the district court's vacation of Peterson-More's voluntary dismissal was appropriate; Peterson-More was a necessary party to the determination of the action, and the district court's order had effectively the same effect as ordering that a necessary party be brought into the action. In a case presenting analogous circumstances, we have held that an order directing the joinder of an additional party was not a final, appealable order. *Lund v. Holbrook*, 157 Neb. 854, 62 N.W.2d 112 (1954).

In *Lund v. Holbrook*, 157 Neb. at 856, 62 N.W.2d at 113-14, we determined that "an order requiring, or permitting, or refusing to permit, the joinder of additional parties is not appealable, since it is interlocutory and not final in nature." See, also, *Kaplan v. City of Omaha*, 100 Neb. 567, 160 N.W. 960 (1916); *Hall v. Vanier*, 7 Neb. 397 (1878). We stated that it was "obvious" that the trial court's order "did not determine the action, nor did such ruling prevent a judgment or affect a substantial right." *Lund v. Holbrook*, 157 Neb. at 857, 62 N.W.2d at 114.

Similarly, in the present case, the district court's vacation of Peterson-More's voluntary dismissal did not affect the subject matter of the litigation. See *SID No. 1 v. Nebraska Pub. Power Dist., supra*. The district court's order did not diminish any of the claims or defenses that were available to Peterson-More prior to the order from which the appeal was taken. See *id.* Thus, we conclude that no substantial right of Peterson-More was affected by the district court's order. This being the case, the district court's order was not appealable. Having so determined, we need not consider whether the vacation of Peterson-More's voluntary dismissal occurred in the context of a special proceeding.

In short, none of Peterson-More's substantive claims or defenses were diminished by the overruling of his special appearance, and the overruling of Peterson-More's special appearance and voluntary dismissal was not a final, appealable order. The appeal in case No. S-97-412 must therefore be dismissed.

### (c) Trial Court's Jurisdiction

There remains the question whether Peterson-More's notice of appeal, however ineffectual, served to deprive the district court of jurisdiction to enter a final judgment. In *Doolittle v. American Nat. Bank of Omaha*, 58 Neb. 454, 78 N.W. 926 (1899), this court faced a situation in which a defendant attempted to appeal the trial court's order striking portions of the defendant's answer. We found that to be a nonfinal order and dismissed that appeal, but in the meantime, the trial court had proceeded to address the merits of the case. *Id.* In the appeal

from the final judgment, we affirmed the judgment of the trial court, holding:

> The order [to strike portions of the answer] was not a final [order], and that there had been an attempt to lodge an error proceeding in this court to review it furnished no reason for any delay in the trial of the cause on its merits in the district court.

*Id.* at 456, 78 N.W. at 927.

In the intervening years, the rule established in other jurisdictions has been consistent with our holding in *Doolittle v. American Nat. Bank of Omaha, supra.* See, e.g., *U.S. v. Green*, 882 F.2d 999 (5th Cir. 1989); *United States v. Bastanipour*, 697 F.2d 170 (7th Cir. 1982), *cert. denied* 460 U.S. 1091, 103 S. Ct. 1790, 76 L. Ed. 2d 358 (1983); *United States v. Garner*, 663 F.2d 834 (9th Cir. 1981), *cert. denied* 456 U.S. 905, 102 S. Ct. 1750, 72 L. Ed. 2d 161 (1982); *Cochran v. Birkel*, 651 F.2d 1219 (6th Cir. 1981), *cert. denied* 454 U.S. 1152, 102 S. Ct. 1020, 71 L. Ed. 2d 307 (1982); *Leonhard v. United States*, 633 F.2d 599 (2d Cir. 1980), *cert. denied* 451 U.S. 908, 101 S. Ct. 1975, 68 L. Ed. 2d 295 (1981); *Arthur Andersen & Co. v. Finesilver*, 546 F.2d 338 (10th Cir. 1976), *cert. denied* 429 U.S. 1096, 97 S. Ct. 1113, 51 L. Ed. 2d 543 (1977); *Hodgson v. Mahoney*, 460 F.2d 326 (1st Cir. 1972), *cert. denied* 409 U.S. 1039, 93 S. Ct. 519, 34 L. Ed. 2d 488; *United Accounts v. Teladvantage, Inc.*, 499 N.W.2d 115 (N.D. 1993); *S. C. Public Service Authority v. Arnold*, 287 S.C. 584, 340 S.E.2d 535 (1986); *Spaeth v. City of Plymouth*, 344 N.W.2d 815 (Minn. 1984); *Knox v. Dick*, 99 Nev. 514, 665 P.2d 267 (1983); *Utilities Comm. v. Edmisten, Attorney General*, 291 N.C. 361, 230 S.E.2d 671 (1976); *Welch v. City of Evanston*, 181 Ill. App. 3d 49, 536 N.E.2d 866, 129 Ill. Dec. 816 (1989), *appeal denied* 127 Ill. 2d 644, 545 N.E.2d 134, 136 Ill. Dec. 610; *Camp v. Jiminez*, 107 Idaho 878, 693 P.2d 1080 (Idaho App. 1984); *Sakian v. Taylor*, 18 Ohio App. 3d 62, 480 N.E.2d 822 (1984); *Yaeger v. Vance*, 20 Ariz. App. 399, 513 P.2d 688 (1973); *Smiley v. Atkinson*, 12 Md. App. 543, 280 A.2d 277 (1971), *aff'd* 265 Md. 129, 287 A.2d 770 (1972). See, also, generally, 5 Am. Jur. 2d *Appellate Review* § 424 (1995). But see *Swain Constr. v.*

*Ready Mixed Concrete Co.*, 4 Neb. App. 316, 542 N.W.2d 706 (1996).

As noted by the Court of Special Appeals of Maryland:

> [A]ny other rule would be utterly unthinkable. Any party would then be able, at any time before final judgment, to bring the trial of a case to an abrupt halt by merely filing an order for appeal from any ruling of the court. Control of the judicial process would thus pass from the courts to the parties and their counsel. Mistrials and continuances would be available without limitation at the whim of any party. The trial court must have, and does have, the power to determine whether its jurisdiction to proceed has been ousted. Should any abuse of that power ever arise, such abuse could undoubtedly be corrected by prompt appellate action.

*Smiley v. Atkinson*, 12 Md. App. at 550-51, 280 A.2d at 282. We agree.

Thus, we conclude that the notice of appeal from a nonappealable order does not render void for lack of jurisdiction acts of the trial court taken in the interval between the filing of the notice and the dismissal of the appeal by the appellate court. Therefore, Peterson-More's assignment of error is without merit.

While we are without jurisdiction to consider Peterson-More's appeal in case No. S-97-412, the issues raised in that appeal are nonetheless presented to us in case No. S-97-509. Peterson-More argues that the district court lacked jurisdiction to enter the judgment from which appeal No. S-97-509 was taken, because of Peterson-More's attempt at voluntary dismissal and because of the district court's alleged lack of personal jurisdiction over him.

## 2. VOLUNTARY DISMISSAL

Peterson-More's first, second, third, fourth, and sixth assignments of error all address the same issue. All of these assignments of error are predicated on the same assertion—that the district court erred in denying Peterson-More's voluntary dismissal of his claims. This presents a question of law, regarding which we reach a conclusion independent of the lower court's

ruling. See *Divis v. Clarklift of Nebraska, ante* p. 384, 590 N.W.2d 696 (1999).

Peterson-More contends that the trial court had no discretion to disallow his attempt to voluntarily dismiss his claims. Branon contends that Peterson-More was a necessary party and that a trial court has the authority to keep Peterson-More as a party to the action. We must decide whether a trial court has the authority to deny a voluntary dismissal under the circumstances presented here.

The ability of a plaintiff to voluntarily dismiss his or her claim without prejudice is codified in §§ 25-601 and 25-602. It is provided in § 25-601 that "[a]n action may be dismissed without prejudice to a future action (1) by the plaintiff, before the final submission of the case to the jury . . . ." It is further provided in § 25-602 that

> [t]he plaintiff, in any case pending in the district or Supreme Court of the state, shall, when no counterclaim or setoff has been filed by the opposite party, have the right in the vacation of any of said courts to dismiss his said action without prejudice, upon payment of costs, which dismissal shall be, by the clerk of any of said courts, entered upon the journal and take effect from and after the date thereof.

It is well established that the right of a plaintiff to voluntary dismissal is a right that is " 'not a matter of judicial grace or discretion.' " *Grady v. Visiting Nurse Assn.*, 246 Neb. 1013, 1016, 524 N.W.2d 559, 561 (1994). See, also, *Dawson v. Papio Nat. Resources Dist.*, 210 Neb. 100, 313 N.W.2d 242 (1981).

This right, however, is not absolute. We have held that dismissal may properly be conditional where it would deprive or endanger a right accrued to the adverse party in the very cause sought to be dismissed. *Schroeder v. Schroeder*, 223 Neb. 684, 392 N.W.2d 787 (1986). See, also, *Feight v. Mathers*, 153 Neb. 839, 46 N.W.2d 492 (1951). In some circumstances, the court may attach conditions to the dismissal where justice and equitable principles so require. *Dawson v. Papio Nat. Resources Dist., supra.* See, also, *Feight v. Mathers, supra.*

We have also "heretofore affirmed that when justice to the court or to its officers or to any of the parties requires imposi-

tion of terms or retention of the cause on the docket, the court in its discretion may impose such terms or refuse to permit dismissal." *Tuttle v. Wyman*, 149 Neb. 769, 777-78, 32 N.W.2d 742, 748 (1948).

In the present case, Branon argues that Peterson-More's dismissal would prejudice her because Peterson-More is a necessary party and that her rights would be prejudiced by his absence because it would prevent the final determination of her claims and the claims against her.

A necessary or indispensable party to a suit is one who has an interest in the controversy to an extent that such party's absence from the proceedings prevents the court from making a final determination concerning the controversy without affecting such party's interest. *Taylor Oil Co. v. Retikis*, 254 Neb. 275, 575 N.W.2d 870 (1998); *Hall Cty. Pub. Defenders v. County of Hall*, 253 Neb. 763, 571 N.W.2d 789 (1998).

> An indispensable party is one whose interest in the subject matter of the controversy is such that the controversy cannot be finally adjudicated without affecting the indispensable party's interest, or which is such that not to address the interest of the indispensable party would leave the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.

*Professional Firefighters of Omaha v. City of Omaha*, 243 Neb. 166, 169-70, 498 N.W.2d 325, 329 (1993).

The presence of necessary parties is jurisdictional and cannot be waived, and if such persons are not made parties, then the district court has no jurisdiction to determine the controversy. *Taylor Oil Co. v. Retikis, supra*; *Robertson v. School Dist. No. 17*, 252 Neb. 103, 560 N.W.2d 469 (1997).

It is clear, therefore, that Peterson-More was a necessary party to the dispute between Branon and her former attorneys. Branon and her former counsel were disputing the division of a fixed sum of money, with Branon entitled to any funds left over after the attorneys were compensated. Under those circumstances, any money distributed to any of the attorneys necessarily came at the expense of Branon. Thus, Branon and all of the

claimant attorneys were necessary parties because their interests were adverse and mutually exclusive.

Neb. Rev. Stat. § 25-323 (Reissue 1995) states in part:

> The court may determine any controversy between parties before it when it can be done without prejudice to the rights of others or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in.

See, also, e.g., *Vaccaro v. City of Omaha*, 254 Neb. 800, 579 N.W.2d 535 (1998); *State on behalf of J.R. v. Mendoza*, 240 Neb. 149, 481 N.W.2d 165 (1992).

If Peterson-More were allowed to dismiss his claim, then the district court would have been deprived of jurisdiction to consider the remaining claims.

While the district court did not explicitly state that Peterson-More was a necessary party, the court's order denying the special appearance states, "Thomas Peterson-More should not be allowed to dismiss his claim for attorney's fees to the prejudice of other parties involved in this action . . . ." This is a clear reference to the fact that, given the situation, a determination of Peterson-More's claim was necessary to resolving the claims of the other attorneys and so also necessary to release the balance of the settlement proceeds to Branon.

Because Peterson-More was a necessary party, his absence from the action would simply have required the district court to bring him back into the suit in order to resolve everyone else's claims. Moreover, his dismissal threatened the rights of Branon and the other attorneys to have their claims finally determined and the settlement proceeds disbursed. Under those circumstances, the district court did not err in refusing to allow Peterson-More's voluntary dismissal.

### 3. PERSONAL JURISDICTION

Peterson-More contends that the district court lacked personal jurisdiction over him consistent with the Due Process Clause, as interpreted in *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945), and its progeny. Branon argues that Peterson-More's actions subjected him to

the jurisdiction of the Nebraska courts. This issue presents both legal issues regarding the standards to be applied to personal jurisdiction and factual determinations regarding Peterson-More's contacts with Nebraska. When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court's; however, when a determination rests on factual findings, a trial court's decision on the issue will be upheld unless the factual findings concerning jurisdiction are clearly incorrect. *In re Interest of Kelley D. & Heather D., ante* p. 465, 590 N.W.2d 392 (1999); *Crete Carrier Corp. v. Red Food Stores*, 254 Neb. 323, 576 N.W.2d 760 (1998).

The Nebraska long-arm statute provides: "A court may exercise personal jurisdiction over a person: (1) Who acts directly or by an agent, as to a cause of action arising from the person: (a) Transacting any business in this state; (b) Contracting to supply services or things in this state . . . ." Neb. Rev. Stat. § 25-536 (Reissue 1995).

Before a court can exercise personal jurisdiction over a nonresident defendant, the court must determine, first, whether the long-arm statute is satisfied and, if the long-arm statute is satisfied, second, whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process. *Crete Carrier Corp. v. Red Food Stores, supra.*

It is clear that under § 25-536(1)(a) and (b), Peterson-More is subject to the terms of Nebraska's long-arm statute. We must therefore determine if the exercise of this jurisdiction comports with due process requirements.

We have held that the benchmark for determining if the exercise of personal jurisdiction satisfies due process is whether a defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there. *Castle Rose v. Philadelphia Bar & Grill*, 254 Neb. 299, 576 N.W.2d 192 (1998); *Wagner v. Unicord Corp.*, 247 Neb. 217, 526 N.W.2d 74 (1995). Whether the forum state court has personal jurisdiction over a nonresident defendant depends on whether the defendant's contacts with the forum state are the

result of unilateral acts performed by someone other than the defendant, or whether the defendant himself or herself acted in a manner which created substantial connections with the forum state, resulting in the defendant's purposeful availment of the benefits and protections of the law of the forum state. *Wagner v. Unicord Corp., supra.*

If the defendant established minimum contacts with Nebraska, then a court must consider the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Crete Carrier Corp. v. Red Food Stores, supra,* citing *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1982), and *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

Peterson-More was of counsel to Kaplan, which contracted to provide legal services in Nebraska to Branon and her husband's estate. Peterson-More personally came to this state several times in order to provide those services, was admitted to practice pro hac vice in the Nebraska courts, contracted with counsel in a companion case to share common expenses, filed pleadings signed in his name, and participated at length in an evidentiary hearing after the district court made it clear to him that he was proceeding pro se to determine to what he, personally, might be entitled in quantum meruit. In that regard, Peterson-More utilized the Nebraska courts for his own interests. It can hardly be said that he could not anticipate being haled into a Nebraska court or that his actions were not personally instigated.

Furthermore, the burden, if any, on Peterson-More of litigating in this forum was not sufficiently discouraging to prevent him from contracting to litigate in Nebraska on Branon's behalf, from pursuing his quantum meruit claim, from retaining local counsel, or from pursuing on Kaplan's behalf an action against Branon in the U.S. District Court for the District of Nebraska. Peterson-More has identified no forum with an interest in these matters greater than Nebraska's.

Overall, the record clearly establishes support for the district court's factual finding that Peterson-More had established minimum contacts with this forum; that finding was not clearly incorrect and will not be disturbed on appeal. The remaining considerations, of the burden on Peterson-More and the interests of this forum and others in resolving the dispute, weigh in favor of this forum's exercising jurisdiction.

Peterson-More argues in his brief that he did not conduct business on his own behalf, but acted only as an agent for Kaplan. Even if true, this is not relevant. Nebraska has rejected the fiduciary shield doctrine as a bar to personal jurisdiction. See, *Crystal Clear Optical v. Silver*, 247 Neb. 981, 531 N.W.2d 535 (1995); *McGowan Grain v. Sanburg*, 225 Neb. 129, 403 N.W.2d 340 (1987). Under Nebraska law, the focus is on the defendant's actions regardless of the capacity in which those actions were undertaken.

### 4. WITNESS FEES

Peterson-More argues that the trial court abused its discretion in ordering witness fees in excess of the amount provided by statute. Branon argues that the fees assessed were assessed not as costs but as sanctions for Peterson-More's delays. Neb. Rev. Stat. § 25-824(4) (Reissue 1995) provides in part:

> The court shall assess attorney's fees and costs if, upon the motion of any party or the court itself, the court finds that an attorney or party brought or defended an action or any part of an action that was frivolous or that the action or any part of the action was interposed solely for delay or harassment.

In ordering awards to Snyder and Hofmeister, the district court specifically indicated that the awards were "witness fees and expenses of waiting to testify and having to return another day due to a continuance requested by Thomas Peterson-More." The trial judge's statements reveal that the awards were intended to be a sanction, assessed against an attorney who, in the opinion of the district court, abused the judicial process with unnecessary delays. The amount of such sanctions is not fixed, but left to the discretion of the trial court, and the question presented on appeal is whether the trial court abused its discretion.

*Cedars Corp. v. Sun Valley Dev. Co.*, 253 Neb. 999, 573 N.W.2d 467 (1998).

The record contains affidavits from Snyder and Hofmeister regarding the time, mileage, and expenses wasted when opposing counsel was unready for their testimony at the time that it had been scheduled to occur. The affidavit from Snyder relates to his activities on April 2, 1997. On that date, a scheduled hearing was ended prematurely because Peterson-More claimed that he was not prepared to proceed with the introduction of evidence, despite clear notice provided to Peterson-More that the hearing on that date was to be evidentiary. Under such circumstances, it was not an abuse of discretion to assess expenses for Snyder's extra day of travel to testify, when those expenses were necessitated by Peterson-More's unpreparedness.

The affidavit from Hofmeister, however, relates to a hearing held on April 11, 1997. Peterson-More was not present at this hearing, personally or through counsel, nor is there any indication in the record that he was expected to appear. The hearing began at 1:30 p.m. and Hofmeister was called to testify at 4 p.m., but counsel for Haines asked that the proceedings be ended then so that Haines could return to Scottsbluff in time to catch a plane. The district court granted the request, but indicated that if a request for costs was made, it would probably be granted.

It is clear from the record that the delay in Hofmeister's testimony was not caused by Peterson-More, but by Haines. We determine, therefore, that it was an abuse of discretion to charge Peterson-More for Hofmeister's expenses from the April 11, 1997, hearing.

## 5. ORDER TO COUNTY COURT

Peterson-More asserts that the trial court erred in issuing its judgment to the county court, arguing that this was improper because there is no authority granting jurisdiction to a district court to issue an order to a county court except on direct appeal. This is a question of law, on which we reach a conclusion independent of the lower court's ruling. See *Divis v. Clarklift of Nebraska, ante* p. 384, 590 N.W.2d 696 (1999).

It is well established that in common-law and equity actions relating to decedents' estates, the county courts have concurrent original jurisdiction with the district courts. *Marten v. Staab,* 249 Neb. 299, 543 N.W.2d 436 (1996); *Iodence v. Potmesil,* 239 Neb. 387, 476 N.W.2d 554 (1991); *In re Estate of Steppuhn,* 221 Neb. 329, 377 N.W.2d 83 (1985). Where jurisdiction is concurrent, basic principles of judicial administration require that the court which first acquires jurisdiction should retain it to the exclusion of the other court. *In re Estate of Kentopp. Kentopp v. Kentopp,* 206 Neb. 776, 295 N.W.2d 275 (1980). Additionally, where a court of equity has properly acquired jurisdiction in a suit for equitable relief, it may make complete adjudication of all matters properly presented and involved in the case and grant relief, legal or equitable, as may be required and thus avoid unnecessary litigation. *Dillon Tire, Inc. v. Fifer, ante* p. 147, 589 N.W.2d 137 (1999).

In this case, the settlement agreement provided that money was to be paid in to the county court, but that the district court where the case had been filed would retain jurisdiction over the fees generated by the case. There is little practical distinction between the county court in this case and any other court-appointed receiver available to the district court. Under those circumstances, the district court did not err in retaining jurisdiction over the attorneys' dispute and in issuing orders to the county court regarding dispensation of the funds.

### 6. DISTRIBUTION OF FUNDS WITHOUT NOTICE

Kaplan argues that the distribution of funds by the county court occurred without notice to it, thereby violating Kaplan's due process rights. Branon raises several challenges, mostly relating to improper jurisdiction and standing. This also presents a question of law, on which we reach a conclusion independent of the lower court's ruling. See *Divis v. Clarklift of Nebraska, supra.*

Resolution of this issue is simplified by the fact that Kaplan had actual notice of the action in which its claim for fees would be resolved. The evidence of that notice is contained in the record of the district court proceeding in which the dispute over attorney fees was actually resolved.

It is provided by statute that judicial notice may be taken of any fact not subject to reasonable dispute, as such fact is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Neb. Rev. Stat. § 27-201(2)(b) (Reissue 1995). It is well established that where cases are interwoven and interdependent and the controversy involved has already been considered and determined by the court in a former proceeding involving one of the parties now before it, the court has the right to examine its own records and take judicial notice of its own proceedings and judgments in the former action. *Baltensperger v. Wellensiek*, 250 Neb. 938, 554 N.W.2d 137 (1996); *Baltensperger v. United States Dept. of Ag.*, 250 Neb. 216, 548 N.W.2d 733 (1996). Similarly, we have held that a court may take judicial notice of a document in a separate but related action concerning the same subject matter in the same court. *State Security Savings Co. v. Pelster*, 207 Neb. 158, 296 N.W.2d 702 (1980).

It is, therefore, appropriate for this court to take judicial notice of the record on appeal in a companion case which has been consolidated for appeal with the instant case. Thus, we judicially notice the facts set forth in the district court record for purposes of resolving Kaplan's appeal from the county court proceeding. In that appeal, Kaplan complains that it did not get notice from the county court that funds were to be disbursed. The district court record, however, shows that Kaplan did have notice of when and how the decisions regarding those funds were to be made by the district court.

" 'The central meaning of procedural due process is that parties whose rights are to be affected are entitled to be heard, and, in order that they might enjoy that right, they must first be notified.' " *McAllister v. Nebraska Dept. of Corr. Servs.*, 253 Neb. 910, 912-13, 573 N.W.2d 143, 146 (1998), quoting *Dannehl v. Department of Motor Vehicles*, 3 Neb. App. 492, 529 N.W.2d 100 (1995). The requirements of due process are satisfied if a person has reasonable notice and an opportunity to be heard appropriate to the nature of the proceeding and the character of the rights which might be affected by it; if a person has access to the courts for protection of his or her rights, it cannot be said that such a person has been deprived of property without due

process of law. *Boll v. Department of Revenue*, 247 Neb. 473, 528 N.W.2d 300 (1995). Accord *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994).

Counsel for Kaplan was informed by the district court exactly what was going to happen with reference to the funds in the county court. Therefore, Kaplan had actual notice of the proceedings, and its due process rights were not violated. Kaplan's assignment of error is without merit.

### 7. KAPLAN'S ATTORNEY'S LIEN IN COUNTY COURT

Kaplan further assigns that the county court erred in distributing funds without determining the extent of Kaplan's lien. For the reasons set forth above, we determine as a matter of law that Kaplan did not have an effective attorney's lien, because the funds at issue were not in the hands of an adverse party within the meaning of § 7-108. Kaplan had notice of the district court hearing at which such issues were resolved and was entitled to no notice from the county court, because no valid attorney's lien was filed in that court. The county court committed no error.

### VI. CONCLUSION

At the conclusion of closing arguments in the district court, the district court judge told Branon that he would like to "apologize for the judicial system and how you've been put upon in this case, because I do think that you have." We totally agree with the district court. As former U.S. Supreme Court Chief Justice Burger observed, "[L]awyers who know how to think but have not learned how to behave are a menace and a liability, not an asset, to the administration of justice." Warren E. Burger, Delivery of Justice at 175 (1990). The conduct by some of the lawyers in this case, particularly Peterson-More and Kaplan, has not only resulted in hardship to Branon, but engaged this court, the district and county courts, and the federal courts in a significant waste of judicial resources. In the hope that our decision will bring an end to this litigation, we determine that all of Peterson-More's and Kaplan's assignments of error, save one, are without merit.

Peterson-More's appeal in case No. S-97-412 is taken from a nonappealable order and is dismissed. Peterson-More's assignments of error in case No. S-97-509 are meritless, except that the district court erred in awarding sanctions in the amount of $237.20 to Paul Hofmeister, and that portion of the judgment is vacated. Otherwise, the district court's judgment in case No. S-97-509 is affirmed. Kaplan's assignments of error to the county court in case No. S-97-533 are entirely meritless, and that judgment is affirmed.

APPEAL IN NO. S-97-412 DISMISSED.

JUDGMENT IN NO. S-97-509 AFFIRMED AS MODIFIED.

JUDGMENT IN NO. S-97-533 AFFIRMED.

WHITE, C.J., and STEPHAN, J., not participating.